# The Philadelphia and Reading Railroad Co. *versus* Yerger *et al.*

1. A party is not answerable in damages for the reasonable exercise of a right, unless upon proof of negligence, unskilfulness or malice.

2. Buildings were burned by sparks, from a locomotive engine used in the ordinary way on a railroad; in a suit against the company by the owner, *Held*, there being no evidence to justify an inference of negligence, that the jury should have been instructed to find for the defendants.

3. Howard Express Co. *v.* Wile, 14 P. F. Smith 201, followed.

January 22d 1873. Before READ, C. J., AGNEW, WILLIAMS and MERCUR, JJ. SHARSWOOD, J., at Nisi Prius.

Error to the Court of Common Pleas of *Montgomery county:* No. 335, of January Term 1872.

This was an action on the case brought February 25th 1870, by Joseph Yeager and others against The Philadelphia and Reading Railroad Company, for negligence, in the burning by one of their locomotive engines of a block of four small tenements in Pottstown, about sixty feet from the line of the railroad. The fire occurred on the 4th of July 1868, about 3.45 o'clock in the afternoon. The case was tried August 16th 1871, before Ross, P. J.

[Philadelphia & Reading Railroad Co. *v.* Yerger.]

Henry M. Pile, a witness for plaintiff, testified that on the day mentioned, a train came down the railroad from Reading and stopped at a water-station about thirty-five yards below the houses; after the engine had taken in water the train backed up the road again; the engine puffed very hard, and attracted the attention of witness, who looked up and saw the roof of the houses on fire; the train was a long one; the puffing was as common until it backed up.

Joel Kulp testified that another train had passed not very long before; he did not hear it puff at the water-plug, the engine blew off as having too much steam; saw Pile run to the fire, ran after him and then saw the roof on fire; he saw no sparks.

John Barlow testified somewhat similarly as to the fire. He testified also that the engine made a great noise whistling, "trying to go backward and forward; she seemed to have some trouble the way she worked; went like engines do when they are heavily loaded."

Other witnesses testified that the engine made an extraordinary noise, as if there was a heavy load which there was difficulty in moving; that the wheels went around without moving; that the fire was discovered shortly after this engine, " The Lancaster," passed by with its train.

Jonas Smith testified :—

" I was sitting in my room at Pottstown, and heard a great noise at water-station at railroad. I thought if that fellow goes on in that way, he will set something afire. Noise seemed as if he was hauling backward and forward, and shortly after the noise I heard them halloo fire. My office is four hundred yards from the water-station, a little over three hundred feet from the railroad. * * * I was frightened, I thought it would set something on fire."

One witness testified that he saw the engine throwing out sparks across the turnpike, which was beyond the burned buildings.

The plaintiffs having rested, the defendants moved for a nonsuit; the court refused the motion, and sealed a bill of exceptions.

The defendants gave evidence for the purpose of showing that the fire originated inside of the house in the garret.

William Brown, engineer of the " Lancaster," testified that he had a train of eighty or eighty-five coal cars on the day of the fire; a full train is one hundred and twenty-five cars; his spark-arrester was in good condition; it had been examined the day before; the engine also was in good condition; he shut off the steam at the " Orchard," about a mile above Pottstown; the momentum carried the train three or four cars below the water-plug; he put on a fresh fire at the " Orchard," and in backing to the plug he did not throw fire by reversing, because it was a green fire; exhaust steam is used to fan the fire; he used some exhaust steam, but not much.

[Philadelphia & Reading Railroad Co. v. Yeager.]

Kelly, the fireman of the "Lancaster," testified that the steam was shut off at the "Orchard," and not put on until the train was backed up to the water-station; had put on about a ton of coal at Pottstown, and a ton and a half at Reading; when green ·coal goes on the sparks can't fly; takes four miles to get red with a heavy train.

Other witnesses testified in the same manner.

Christian Snyder was employed by the defendants at Richmond to examine spark-arresters; he examined the "Lancaster" on the 6th of July; it was all in good order; the spark-catcher was a little worn, but just as good as new; if the spark-arrester be good it can throw no large sparks.

Joseph Dill testified that his duty was to examine spark-arresters at Palo Alto; if the "Lancaster" was there on the 2d of July, she was examined; "if there had been any defect, she would have been removed; if we found her worn the least bit, it would have been removed."

John F. Wooten testified that he had been on the railroad for twenty-five, and had had charge of the machinery of the railroad for five years; he had made spark-arresters one of his studies and considered himself an expert; the "Lancaster" was built in 1864, it had been in use altogether in the coal trade between Palo Alto and Richmond; its spark-arrester is an efficient one; "it arrests sparks as far as it is possible to do so; there are no better with reference to grades, the business of the road, &c.; the arrester on the 'Lancaster' is the best we have reached for the uses of the road; the 'Lancaster' is one of our most improved engines." There are men employed to examine the arresters at certain stations every morning.

There was other evidence that the spark-arresters on the defendants' engines were of the most improved kind.

There was evidence that other engines which had passed about the time of the fire, were in good condition.

The court charged:—

"The counsel for the defendant has requested the court to charge that there is no testimony adduced before you, that would justify you in concluding that the defendant was guilty of any negligence. This, however, we cannot do, for we think the question as to the existence of negligence, under the facts in this case, must be submitted to you. We have carefully defined the rules by which you must be governed in your investigations; and you will take the entire testimony, and determine whether the defendant by his exclusive negligence, caused this fire."

The verdict was for the plaintiffs for $2125.18.

The defendants took a writ of error and assigned for error:—

1, 2. The charge of the court.

6. The refusal of the court to order a nonsuit.

*J. Boyd*, for plaintiffs in error.—The burden of proof of negli-was on the plaintiffs: McCully *v.* Clarke, 4 Wright 399.  There was no evidence of negligence and the jury should have been so instructed: Howard Express Co. *v.* Wile, 14 P. F. Smith 201.

*B. M. Boyer* and *D. H. Mulvany*, for defendants in error.

The opinion of the court was delivered, May 17th 1873, by

MERCUR, J.—When the plaintiffs below rested their case the defendants moved for a nonsuit.  This was refused by the court; that refusal is now assigned for error.

If the defendant had declined to give any testimony we would consider the sufficiency of the evidence then given.  As, however, much evidence was afterwards introduced, the whole should be considered together.

The action was brought by the defendants in error to recover damages for the burning of a block of buildings.  The fire was alleged to have been caused by sparks from the stack of the railway company's locomotive " Lancaster."  The buildings were situated within a few feet of the railroad embankment, and near the water-stand, where the locomotive was supplied with water.

The evidence as to whether the sparks caused the fire, was properly submitted to the jury, who found they did.

The defendants requested the court to charge the jury, that there was no testimony which would justify them in finding the defendant guilty of any negligence.  This the court refused to do, but left it to them to determine from the whole testimony, whether the defendant, by his exclusive negligence, caused the fire.

For this refusal and charge the principal errors are assigned.

Negligence is the gist of this action.  To recover, the plaintiff must have established the defendant's exclusive negligence.

Was there such evidence of this fact, that it should have been submitted to the jury ?

It was formerly held, that where there was a scintilla of evidence of a material fact, the question should be submitted to the jury.

This doctrine, however, has been overruled, both in England and by this court.

In Wheelan *v.* Hardisty, 8 El. & Bl. 262, it is said, that an end has been put to what has been treated as the rule, that a case must go to the jury, if there was what has been termed a scintilla of evidence.  The question is, whether the proof is such, that the jury could reasonably come to the conclusion that the issue was proved.

Toomey *v.* Railway Co., 3 C. B. N. S. 146, was a case for negligence.  It was there held, that it was not enough to say there was some evidence.  A scintilla of evidence, or a mere surmise,

that there may have been negligence on the part of the defendant, clearly would not justify the judge in leaving the case to the jury. There must be evidence upon which they might reasonably and properly conclude that there was negligence.

In Ryder *v.* Wombwell, 4 Law Rep. Ex. 32, it was said by Willes, J., that it is now settled that the question for the judge is not whether there is literally no evidence, but whether there is none that ought reasonably to satisfy the jury that the fact sought to be proved is established. If there is not, the judge ought to withdraw the question from the jury, and direct a nonsuit, if the onus is on the plaintiff, or direct a verdict for the plaintiff if the onus is on the defendant.

The case of Ryder *v.* Wombwell is cited with approbation by the court, in Howard Express Co. *v.* Wile, 14 P. F. Smith 201. There the rule is more distinctly and clearly stated by Justice Sharswood, to be, that where there is any evidence which alone would justify an inference of the disputed fact, it must go to the jury, no matter how strong or persuasive may be the countervailing proof; but in a case in which a court ought to say that there is no evidence sufficient to authorize the inference, then the verdict would be without evidence, not contrary to the weight of it. Whenever this is so, they have the right, and it is their duty, to withhold it from the jury.

The uncontradicted evidence in this case, showed that the spark-arrester was perfect in mechanical construction, and in efficient condition at the time of the fire; the learned judge, upon disposing of the rule for a new trial, states these facts to have been admitted. He would have set aside the verdict upon the ground that it was against the weight of the evidence, had he not been constrained by the judgment of his colleagues, his associates not learned in the law.

Sitting as a court of last resort, we cannot reverse merely because we may think the verdict was against the weight of evidence. If any evidence was given, which, alone and uncontradicted, would justify an inference that the injury was caused by the exclusive negligence of the defendant below, we will not disturb it. If, upon the other hand, there was no such evidence, then the court erred in not affirming the point submitted by the defendant.

The rule is well settled, that a party is not answerable in damages for the reasonable exercise of a right, unless upon proof of negligence, unskilfulness or malice. In this case there is no allegation of malice. The proof is clear, that there was no negligence or unskilfulness in the construction of the locomotive or spark-arrester.

John F. Wootten testified that he was in charge of the machinery of the road. Was a machinist; had paid considerable attention to spark-arresters; had made that one of his studies; considered himself an expert upon that subject; had 300 engines under his charge,

[Philadelphia & Reading Railroad Co. *v.* Yeager.]

having spark-arresters; knew this locomotive and this spark-arrester; considered it an efficient spark-arrester. It arrests the sparks as far as it is possible to do so, considering the purposes of the engine and other considerations required from spark-arresters. No better with reference to grades, the business of the road, and the necessary duties the engine has to perform, after eight or nine years' experimenting; that on the Lancaster is the best they have reached for the uses of the road, the Lancaster is one of their most improved engines; the size of the fire-box is increased in it, which results in slowness of combustion, economy of fuel, and *diminishes* the emission of sparks. No coal-burning engines, with smaller spaces than the Lancaster, nothing larger than an eighth of an inch, would pass through.

William Lorenz testified that he had been for twenty years a civil engineer; is now the chief engineer of the company; was formerly engineer in locomotive department; is familiar with spark-arresters on the road; from knowledge thus derived, and interest taken therein, considers himself an expert; knows the spark-arresters used on the coal-cars at the time of the fire, and knows of no better kind.

It thus appears that the greatest mechanical skill, and the most progressive mechanical science, have united in creating the most perfect machinery adapted to this purpose.

The proof is equally clear that it was in good condition.

Wm. Brown testified that he was the engineer on the Lancaster at the time of the fire. The spark-arrester was in good condition, nothing the matter with it; the day before it had been examined; he had examined it the day after. Re-examined it to see if it had caused the fire; found it all right. Three other witnesses, whose duties were to examine the spark-arresters daily, testify to the good order and condition of this one. It was not quite new, but just as good as new.

It was claimed, however, that an undue amount of coal had been put in the fire-box of the locomotive, and that the moving backwards and forwards while at the water-station, was negligence. A careful examination of the whole evidence fails to show us any negligence in either of these acts. It is therefore just that this company should have the benefit of the principle, that no person, whether natural or artificial, is answerable in damages for the reasonable exercise of a right, accompanied with a cautious regard to the rights of others: Railroad Co. *v.* Yeiser, 8 Barr 366.

To recover, the plaintiff must have established the negligence of the defendant. Yet he has been allowed to recover in the face of the most overwhelming proof that there was no negligence. The learned judge therefore erred in not charging the jury as requested, and the first assignment of error is sustained.

Judgment reversed, and a *venire facias de novo* awarded.