## SELLERS *v.* PARVIS & WILLIAMS CO.

*(Circuit Court, D. Delaware. July 9, 1886.)*

**NUISANCE—PRELIMINARY INJUNCTION—FERTILIZER FACTORY.**

A. filed a bill for an injunction to abate a nuisance, alleging that he was the owner of a farm bounded by a public road on which B. had erected and was operating works for making fertilizers, the fumes and gases from which injured and destroyed his fruit trees and crops, and frequently compelled the doors and windows of his dwelling to be kept closed, to protect the inmates from the offensive and sickening odors. B. answered, denying the injury, and alleging that he had operated the works for several years; that it was only occasionally that any inconvenience was caused thereby to A. and his family; and that he had invested $20,000 in the works, and did a business of $50,000 per annum, which would be ruined if the injunction prayed for was granted. *Held*, on motion for a preliminary injunction, that under the circumstances a preliminary injunction should not be granted.

In Equity.

*Hoffecker & Hoffecker* and *James C. Sellers*, for complainant.

*John Biggs* and *Thomas Davis*, for defendant.

WALES, J. This is a motion for a preliminary injunction. The complainant is the owner of a farm in New Castle county, containing about 290 acres, bounded on the east by a public road. Opposite to the southerly part of the farm, and separated from it by the road, the defendant has erected works for the manufacturing of agricultural fertilizers; and it is alleged that the fumes, vapors, and gases generated by the works, and blown across the farm, blight, poison, and destroy the fruit, grain, and other crops of the complainant; that in the year 1885 many of the trees in the complainant's orchard, bordering on the road, were destroyed or seriously injured, and her corn crop ruined. In addition to this, the noisome odors and foul smells emanating from the works are so offensive

and sickening as to be almost unendurable, and the occupants of the mansion house are frequently compelled to close the doors and windows to protect themselves as much as possible from the annoyance and physical discomfort produced by the nuisance. Inasmuch as this nuisance is recurring at short and irregular intervals, and threatens to be continued and increase, thus depriving the complainant of the beneficial enjoyment of her property, and diminishing its rental and marketable value, and she is without a plain and adequate remedy at law, a motion is now made for a writ of injunction, *pendente lite*, to restrain the defendant from further prosecuting its business.

The defendant company, by the affidavit of its president, states that the business of making fertilizers has been carried on by them, and their predecessors, at the same place, since 1883; the capital invested is $20,000; 56 men are employed in the works; and the annual sales amount to $50,000. Injury to the complainant's property is denied, as well as the personal annoyance and discomfort alleged to be caused by the factory. It is indirectly admitted that some annoyance may be suffered occasionally, when an easterly storm is prevailing, and the process of dissolving rock is being carried on; but that this process is not continuous, and does not consume, on an average, more than 34 days in the year. In clear weather no trouble is perceptible. Reference is made to an agreement entered into between the complainant and her husband on the one part, and Parvis and Williams on the other, in 1884 or 1885, by which it was arranged that, if any damage should be done to the complainant's peach orchard by the factory, the amount thereof should be ascertained by three disinterested persons, and that the company is willing to abide by the said agreement, and to pay any loss the complainant may have suffered from such cause. The company owns about two and a half acres of land immediately around and adjoining the factory, on which, during the years 1884 and 1885, crops of vegetables and grass were successfully grown, and the hedge inclosing the said land was uninjured by the works. If an injunction should now be issued, the company would be obliged to shut down, and its business would be ruined.

When a plain and adequate remedy at law cannot be obtained, the power of a court of equity to abate a private nuisance which is destructive of the property of a complainant, or renders its use and occupation physically uncomfortable, is no longer questionable. The jurisdiction of the court, in such cases, is predicated upon the broad ground of preventing irreparable injury, interminable litigation, a multiplicity of actions, and for the protection of rights. *Parker* v. *Winnipiseogee Co.*, 2 Black, 545; Story, Eq. Jur. § 925; Wood, Nuis. *c.* 25. But, to justify the court in the exercise of this extraordinary power, a strong *prima facie* case of right must be shown. The right must be clear, and its violation palpable. A mere diminution of the value of property by the nuisance, without irreparable mischief, will not be sufficient; and, if the evidence be conflicting and the injury doubtful, the court will not interpose in this summary way; or, if an injunction will work great injury to one

party without corresponding benefit to the other, it should not ordinarily issue, especially when adequate protection can be had without it. *Parker* v. *Winnipiseogee Co.*, *supra;* *Swift* v. *Jenks*, 19 Fed. Rep. 643.

The right to pure air is incident to the land,—as much so as the right to the uninterrupted flow of a stream of pure water which runs through it,—and no one can be permitted to pollute either, to the injury and disadvantage of the owner. In large towns or cities the causes of atmospheric pollution cannot be as easily traced and marked as in more sparsely inhabited places; but even in the former, when the nuisance is well defined, and its source definitely known, the court will interpose to protect the rights of those who are injured by it. Each case, however, must rest on its own merits, and be governed by the special facts and circumstances surrounding it. The rule by which the court is guided in such cases is the ancient maxim that every one must so use his own property as not to injure another. When, therefore, the injured party cannot obtain redress by an action at law for the invasion of his rights, his only resort is to a court of equity; and, when a proper case is presented, the court will not hesitate to protect his rights.

But just here the difficulty often arises, as in the present case, of determining whether the facts will justify the court, in the exercise of a sound discretion, in awarding the writ. Admitting the truth of the complainant's bill, would the court be warranted, at this stage of the case, in granting an injunction? The injury to her fruit and grain crops for this season, whatever may be its extent, has already been suffered, and the damage can be ascertained by a jury, or by such other mode as the parties may be able to agree upon. The physical discomforts to which the occupants of the farm are now subjected, as a direct consequence of the defendant's business, has been submitted to for the past two or three years, without any attempt on the part of the complainant to seek its abatement by a preliminary injunction, and it becomes a serious question whether the court should now summarily interpose by writ to suspend the defendant's business, without giving it the opportunity of answering the bill, and requiring the complainant to prove her charges. The loss of crops, and the depreciation of the rental and marketable values of the farm, so far as such losses have been occasioned by the defendant, can also be ascertained by a jury. The danger of future loss and injury do not appear to be so imminent that the complainant will suffer irreparable mischief by letting the case proceed to a final decree on bill, answer, and proofs.

On the hearing of this motion the complainant produced several *ex parte* affidavits, which were opposed by an equal number of like affidavits on the part of the defendant. Here are statements and counterstatements, assertions and contradictions, without opportunity for cross-examination by either side; and, if there was nothing else in the case to create doubts as to the propriety of granting the motion, this would be sufficient.

A preliminary injunction, if now issued, would be simply staying the alleged nuisance during the pendency of further proceedings to establish

the rights of the parties, and it would be imposing too great a hardship on the defendant to stop its business at this time, when the complainant could derive no benefit or advantage which would compensate for the certain injury which would be inflicted on the company, if, after a fuller investigation, it should appear that it is not in fault, or that the complainant had an adequate legal remedy.  Motion refused.