## STEELE v RAIL & RIVER COAL CO

Ohio Appeals, 7th Dist, Belmont Co

Decided July 7, 1927

Schertzer & Tyler, Bellaire, for plaintiff in error.

Heinlein, Lynch & James, Bridgeport, for defendant in error.

FARR, J.

In the light of the foregoing testimony, the jury found, as above stated, for the defendant. It is claimed, however, that the trial court erred in its instructions to the jury on the measure of damages; that the jury was instructed that the proper measure would be the market value of the property before and after the injury, and this upon the basis of a continuing nuisance. It is not believed that it would be necessary or profitable to discuss this issue at length in view of the opinion of Roberts, J., in the case of Wheeling & Lake Erie Coal Mining Co. v Kryta, where it is held that such instruction is erroneous, and as also held by this court in this county in the case of B. & O. Rd. v Klaer, which is to the effect in the former case that if a nuisance is abatable, that the measure of damages comes within the principle announced in Corpus Juris, 767, 880, 881, 882, 883; 8 Ruling Case Law, 480, 481, 482, 483; 20 Ruling Case Law, 465; B. Stroth Brewing Co. v Schmitt, 1 C. C. (N.S.), 177, 15 C. D., 231; City of

Mansfield v Hunt, 19 C. C., 488, 10 C. D., 567; Upson Coal & Mining Co. v Williams, 18 C. D., 388; 7 C. C. (N.S.), 293, affirmed without opinion 75 Oh St, 644, 80 NE, 1134; Sussex Land & Live Stock Co. v Midwest Refining Co., (C. C. A.), 294 F., 597.

Therefore, on the authority of the opinion in the above case of Wheeling & Lake Erie Coal Mining Co. v Kryta, the conclusion is that since a similar instruction was given by the trial court in the instant case it was erroneous. But was such instruction prejudicial to the substantial rights of plaintiff in error? Obviously it was not, because the jury rendered a general verdict for defendant, raising a presumption that all issues were determined in favor of the defendant below, as observed by Marshall, CJ., in **Jones v Erie Rd. Co., 106 Oh St, 408, at page 410,** 140 NE, 366, 367, as follows: "Assuming that error intervened in submitting one of the defenses to the jury, and keeping in mind that that defense was an affirmative one and therefore not dependent upon or related in the evidence to the issue raised by the general denial, it is urged by defendant in error that it must first be determined by a reviewing court before reversing upon that ground that error intervened in all other defenses; that where a general verdict has been returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in defendant's favor, it will be presumed that all issues were so determined; and, that, where a single determinative issue has been tried free from error, error in presenting another issue will be disregarded. This view of counsel met with approval in the opinion of the Court of Appeals and is in entire harmony with several former well-considered cases decided by this court. The earliest important case is **Sites v Haverstick, 23 Oh St, 626.** That case has been approved and amplified in the following cases: **Beecher v Dunlap, 52 Oh St, 64** (38 NE, 795); **McAllister v Hartzell, 60 Oh St, 69 (53 NE, 715); State ex Lattanner v Hills, 94 Oh St, 171** (113 NE, 1045, L. R. A., 1917B, 684). Unless this court is prepared to overthrow this well-established doctrine, the same views must be approved in the instant case."

Therefore, it is proper to assume that the jury never reached the question of damages, that the instruction consequently would not be prejudicial, and that ground of error cannot avail here.

Next, it is insisted that the trial court erred in giving in charge to the jury defendant's requests to charge before argument.

Request No. 1 relates solely to the definition of a nuisance which warrants a recovery and in which there is clearly no prejudicial error.

No. 2 is to the effect that where a nuisance exists or is maintained, the plaintiff cannot recover damages on account thereof unless he has proven by the preponderance of the evidence that he has sustained substantial damages by reason thereof, and the foregoing is undoubtedly the correct rule.

No. 3 is to the effect that if the jury should find by a preponderance of the evidence that the stone dump of defendant in error, by reason of smoke or whatever else may have been emitted therefrom, created a nuisance, plaintiff would not be entitled to recover by reason of such fact, unless she proved by a preponderance of the evidence that such nuisance was the direct and proximate cause of damages, if any, and without comment it is sufficient to say that the foregoing is by no means prejudicial to plaintiff in error.

No. 4 is to the effect that the plaintiff could not recover for damages caused by anything emitted from the locomotives of the Baltimore & Ohio Railroad, which is undoubtedly correct.

No. 6 is to the effect that every person or corporation has a right to use and occupy his or its property as he or it may see fit or choose to do, provided that in so doing a nuisance is not created which causes substantial injury to the person complaining. Without discussion, it is sufficient to say that the foregoing is not prejudicial to the substantial rights of plaintiff in error.

Without quoting Nos. 7 or 8 it is sufficient to say that they are fully as favorable to plaintiff in error as they could be permitted to be.

Nos. 9 and 10 were refused and are not therefore a ground of complaint.

No. 11 was given and is to the effect that the mining of coal is a lawful industry, and that in the prosecution of such business, and as a necessary incident thereto, there is produced slate and other refuse which a mining company may lawfully deposit on its own land, and that plaintiff could not recover in this case unless she prove by a preponderance of the evidence that she has sustained a material and substantial injury as a result of the action of the defendant, and in determining that fact the jury is instructed to take into consideration the locality of the mine which defendant operates; whether in the country or in a populous neighborhood; all of the surroundings, as the same appear in the evidence, and of the fact, if it be a fact, that manufacturing in which coal is used for fuel is carried on

in the neighborhood by a person or persons other than the defendant; the locality and operation of a railroad, if any, in the same neighborhood, and if the injury, if any, sustained by plaintiff is such that under the particular circumstances of this case, is not material and substantial, the plaintiff cannot recover and your verdict must be for the defendant.

Clearly the foregoing is not prejudicial to plaintiff in error, nor is there any prejudicial error whatever to plaintiff in error in the general charge of the trial court.

There is another issue reflecting directly upon the right of the plaintiff below to recover in this case, and it is this: It is averred in the answer and substantially proven that this Mine No. 6 of the coal company has been open for fifty years, and plaintiff says that they moved into the property in question in March, 1920, and purchased same in April, 1920. Therefore, she purchased and improved this home after she had occupied it and with a full knowledge of her surroundings. No doubt the purpose of locating in the hamlet of Merritt was to avail herself or her family of the benefits of this coal mine, Merritt being a small rural hamlet which probably sprang up as an incident to the operation of the mine. She was, therefore, chargeable with knowledge that the pile of culm or refuse, if not already on fire at the time, was liable to spontaneously ignite. She is, therefore, in the position of purchasing and occupying the property in question with a full knowledge that this pile of refuse was then in existence and liable to take fire without any fault upon the part of the mine operator. What, therefore, is the effect of her voluntary act in this regard?

In 20 Ruling Case Law, 495, it is said: "Previous Knowledge as Defense to Action for Injuries. It is true, as a general proposition, that one who voluntarily places himself in a situation whereby he suffers an injury will not be heard to say that his damage is due to a nuisance maintained by another, a principle which is expressed by the maxim volenti non fit injuria. The test of liability here, as in other situations, is the knowledge of the plaintiff respecting the consequences of his conduct. If it appears that he foresaw or might have foreseen the injury of which he complains, he will not be granted the relief which he prays * * *." The foregoing is sustained by the strong weight of authority.

Therefore, this claimant, sought and obtained a home or "homestead" in this location, charged with full knowledge of what might occur and she should not now be heard to complain.

An examination of the record indicates that the jury must have found that the injury was not of such a nature as to create a liability; nor can it be said that the finding of the jury is so manifestly against the weight of the evidence as to require a reversal upon that proposition, although no claim of this kind is directly made in behalf of plaintiff in error. A number of matters become important in determining the right of recovery in this and similar cases.

In 21 Am. & Eng. Cyc. of L. (2d Ed.), 692, 693, it is observed: "Produced by Lawful Business or Erection. 1. In General—Whether the maintenance of a lawful business productive of noxious or offensive gases or stenches amounts to a nuisance, depends upon the facts of each particular case. In determining the question it is necessary to take into consideration all of the surrounding circumstances, such as the character of the stench or gas complained of; the constancy or frequency of the annoyance; the extent of the injury or inconvenience occasioned thereby; the nature of the business or erection, its location, the manner in which it is conducted or kept, and, in the case of an erection, the manner of its construction. Thus a business or erection which should be located in a remote locality may be a nuisance merely because located in a residence or populous neighborhood * * *."

On this same subject there are some pertinent observations in 29 Cyc., 1190, as follows: "Extent of Injury or Annoyance. 1. In General—It is not every annoyance or inconvenience suffered by a property holder from what is done in his vicinity which constitutes a nuisance against which he is entitled to relief, for what may amount to a serious nuisance in one locality by reason of the density of population or the residential character of the neighborhood affected, or the nature of the specific act, may, in another place, and under different surroundings, be deemed proper and unobjectionable. What amount of annoyance or inconvenience caused by others in the lawful use of their property will constitute a nuisance is a question of degree, depending on varying circumstances, and cannot be precisely defined."

It should be noted that the coal mining industry is an important and extensive business in Belmont county where this mine is located; important not only to this immediate locality, but to the state and elsewhere, and which suggests for consideration the question of the right to recover at all under the circumstances. The case of Pennsylvania Coal Co. v Sanderson, 113 Pa., 126 6A, 453, 57 Am. Rep., 445, is of interest, where it is held that land on a lower level owes a

natural servitude to that on a higher level in respect to receiving, without compensation by the owner, the water naturally flowing from it, and although the existence of a stream, the purity of its water, and its utility for domestic purposes was a leading inducement to the purchase of the lower land, a pollution of the stream by the running into it of acidulated water from a coal mine on the higher land is damnum absque injuria, where the stream forms the natural drainage of the basin in which the coal is situated, and the mine is conducted in the ordinary and usual mode of mining.

The above is a case which has been widely discussed, and in some instances criticized, because in it rather advanced ground is taken. **Straight v Hover, 79 Oh St, 263, 87 NE, 174, 22 L. R. A. (N.S.), 276.**

Time will not here be taken to discuss the facts of this particular case more than to say that the contamination of a stream of pure water by acidulated mine water emptying into it from a coal mine was held to be damnum absque injuria, based practically upon two propositions: First, that the coal mining business in Pennsylvania is an important industry; second, that private or individual interests must be subordinate to such industry, and that the exercise of a lawful right upon one's own premises does not give rise to an action for damages, although it may result in injury upon the premises of another. This latter principle is announced in National Copper Co. v Minnesota Mining Co., 57 Mich., 83, at page 96, 23 NW, 781, at page 787, 58 Am. Rep., 333, as follows: "This is on the plain principle that the mere exercise of a right cannot be a legal wrong to another, and if damage shall happen, it is damnum absque injuria." The same principle is declared in Quinn v Anderson, 70 Cal., 454, 11 P., 746, and in Philadelphia & Reading Rd. Co. v Yerger, 73 Pa., 121.

The following cases reflect somewhat upon the subject under discussion and relate generally to the contamination of waters: Bliss v Washoe Copper Co., (C. C. A.), 186 F, 789; Mountain Copper Co., Ltd. v United States, (C. C. A.), 142 F., 625; Bliss v Anaconda Copper Mining Co., (C.C.A.), 167 F., 342, Sellers v Parvis & Williams Co., (C.C.), 30 F., 164, Merrifield v City of Worcester, 110 Mass. 216, 14 Am. Rep., 592; Barnard v Sherley, 135 Ind., 547, 34 NE, 600, 35 NE, 117, 24 L. R. A., 568, 41 Am. St. Rep., 454; City of Pana v Central Washed Coal Co., 260 Ill., 111, 102 NE, 992.

In this connection the case of Sussex Land & Live Stock Co. v Midwest Refining Co., (C. C. A.), 294 F., 597, becomes of considerable interest. It was an action for the contamination of a stream known as Salt creek by the refining company discharging waste oil into it, thereby rendering certain pasture lands unfit for use. There were findings of fact and conclusions of law to the effect that an injunction should not issue, but that damages should be awarded; the latter upon the theory that the testimony disclosed a physical invasion of the stock company's property. Stone, Circuit Judge, 294 Fed., 600, states the facts of the case, that the refining company has an extensive business, employing thousands of men, and so forth, and then discusses the merits, and at page 601 observes:

"That such injury may exist without liability is certain. But, since such a result is contrary to the general rule of liability where injury is caused; and since, in a sense, it is a preference of the rights of one property owner or user over that of another; and since the law is a jealous guardian of the right to lawfully use property without interference or diminution; and since the rule of 'sic utere ut alienum non laedas' is of broad and fundamental importance—the rule which allows such injury without liability therefor is an exception which is and should be narrowly limited and carefully confined. However, it does exist. Defendant states the rule as follows:

" 'In the case at bar there is at most damage without injury. This comes about as the result of the application of a positive principle of property, namely, that the owner of real estate is entitled to the full, ordinary and natural use and enjoyment of his property. * * *

" 'In conflict with this positive rule of law there is the negative one that the owner of real estate must so use his own property as not to injure his neighbor. It is often difficult to decide which of these principles should control in a given case. Neither one is necessarily preferred. * * *

" 'The reconcilement of the conflict between the two principles is clear. The owner of property has the right to use his land according to the lawful inherent natural use to which it is adapted, and if in the enjoyment of such right, without negligence or malice upon his part, consequential loss, inconvenience or damage occurs to his neighbor, it is a wrong for which there is no liability. This is properly termed the principle or doctrine of "natural user." * * *

" 'The authorities constantly recur to the distinction between natural user and artificial user. * * *

" 'Artificial uses, whether constituting nuisances per se or otherwise, are certainly radically different from such uses as farming, cattle grazing or mining.'

"It defines the natural user as:

" 'The use for which nature fitted his land and intended it should be used.'

"Defendant then declares mining is such natural user and differentiates it from artificial user as follows."

The discussion is continued at pages 602 and 603:

"We understand that defendant does not contend that plaintiff is without remedy, if its legal rights have been violated. The contention is, rather, that no such rights exist. Defendant claims that the legal right of use of land by an owner is subject to and limited by the right of other property owners to develop the natural resources of their lands in a careful manner. This contention means and is intended to mean that a land owner has a legal right to develop the natural resources of his land without liability for damage caused to other land owners thereby, provided he pursues this development in a manner to cause as little damage as possible. We think it clear either that such statement of the rule is too broad or that the application thereof is limited by certain practical and legal considerations. It has been often stated that where the use of land affects others, the use must be 'reasonable' to escape liability for resultant damage to others. What is 'reasonable' depends upon a variety of considerations and circumstances. It is an elastic term which is of uncertain value in a definition. It has been well said that 'reasonable,' as here used, means with 'regard to all the interest affected, his own and his neighbor's and also having in view public policy.' 1 C. J. 1203, note 2.

"But, elastic as this rule is, both reason and authority have declared certain limitations beyond which it cannot extend. One of these limitations is that it is 'unreasonable' and unlawful for one owner to physically invade the land of another owner. There can be no damnum absque injuria where there is such a trespass.

"This is well illustrated and settled by many decisions. Among such are cases where substances have been hurled by blasts upon adjoining property while developing quarries. Scott v Bay, 3 Md. 431; Wilkins v Slate Co., 96 Me. 385, 52 A. 755; Longtin v Persell, 30 Mont., 306, 313, 76 P. 699, 65 L. R. A. 655, 104 Am St. Rep. 723, 2 Ann. Cas. 198; City of Tiffin v McCormack, 34 Oh St 638, 644, 32 Am. Rep. 408. Also see Cary Bros. & Hannon v Morrison, 129 F. 177, 180, 181, 63 C. C. A. 267, 65 L. R. A. 659; St. Peter v Denison, 58 N. Y. 416, 421, 423, 17 Am. Rep. 258; Langhorne v Turman, 141 Ky. 809, 814, 133 SW, 1008, 34 L. R. A. (N.S.), 211; Sullivan v Dunham, 161 N. Y. 290, 55 NE 923, 47 L. R. A. 715, 76 Am. St. Rep. 274; 1 Thompson on Negligence, par. 764; 11 R. C. L. 673. Another large class of such cases is where debris (resulting from natural development of land) has been carried by streams and deposited on other land. Woodruff v Mining Co. (C. C.), 18 F. 753, and cases cited hereinafter concerning pollution of waters."

In view of the foregoing, it is held that the rule of damnum absque injuria does not apply for the reason that it is unreasonable and unlawful for one owner to physically invade the land of another owner.

A case of interest in this connection is that of Columbus & H. C. & I. Co. v Tucker, 48 Oh St, 41, 26 NE, 630, 12 L. R. A., 577, 29 Am. St. Rep., 528, which was an action to recover for the pollution of a stream by reason of the deposit of coal slack upon the premises of the coal company in such location as to wash into a tributary and from there into Monday creek; thereby rendering the water unfit for use, etc.

However, the issue in the above case was whether or not the company had purposely and intentionally so deposited the slack, dirt and refuse. It was so alleged in the petition and denied in the answer, which is a different issue from the one involved here, and it is to be noted also that there was a physical invasion of the property of the lower owner by the slack washing down, the same as in the blasting case of City of Tiffin v McCormack, 34 Oh St, 638, 32 Am. Rep., 408. And at page 62 of 48 Oh St, 26 NE, 630, in the case of Columbus & H. C. & I. Co. v Tucker, there is the suggestive observation by Spear, J., as follows: "And the plaintiff's own conduct did not prevent a recovery."

It is not clear what is meant by the statement, but it is a reasonable presumption that it might apply to one who has voluntarily located himself in territory immediately affected by an alleged nuisance, as in the instant case.

An industry which, as the trial court substantially charged, is not a nuisance in itself, but is a right incident to the ownership of coal property in the proper conduct of mining operations, has a legal right to dump the refuse from its mine on its own property. The culm or refuse arising therefrom is liable to spontaneous combustion, without any fault whatever on the part of the mine owner, and the owner having violated no law has been guilty of no negligence or malice, and having the right to the natural use and enjoyment of its own property, which was the business of mining, when an

unavoidable fire occurs, resulting in no physical invasion of an adjacent owner's property, but perhaps some annoyance in the way of odors or fumes, will such situation sustain an action for damages? It is believed not, and in the light of the circumstances of this case there should be no recovery. Merritt is a very small hamlet. No doubt created as an incident to the very mine about which complaint is now made. Suppose a fire continued to burn in this dump pile, and could not be extinguished or drowned out, as is sometimes the case, and some personal discomfort resulted to a few persons who live about the mine for the possible purpose of employment, must the mine be closed down and abandoned, or financially embarrassed by the payment of such claims as are made in the instant case and the surrounding community deprived of the benefit? Scarcely so, because there is no physical invasion in the instant case of the property of Lulu Steele, and consequently no taking of her property by the coal company, and Spear, J., evidently had such situation somewhat in mind when he observed in **Columbus & H. C. & I. Co. v Tucker, 48 Oh St, at page 61, 26 NE, 630, 633, 12 L. R. A., 577, 29 Am. St. Rep., 528,** supra: "If the injury complained of were merely a fanciful wrong, or produced simply personal discomfort, such as any dweller in a town is necessarily subjected to by reason of the operations of trade which may be there carried on, and which are actually necessary, not only, for the enjoyment of property, but for the benefit of the inhabitants of the town and the public at large, there might be no real ground of complaint."

However, all reasonable effort should be made to extinguish such fire, and, in any event, in determining whether the injury is of such a substantial character as to sustain a cause of action in this class of cases, the extent of the injury is not the only matter to be considered; however, that is to be considered in connection with the character of the neighborhood and in connection with whether plaintiff improved his property after the creation of the pile of culm or refuse when he should have reasonably anticipated the results which followed, and consideration should likewise be given to whether the making of such pile of refuse or culm is necessary to the operation of a coal mine, and whether all reasonable precautions have been taken to prevent injury therefrom; also the extent of public service and benefit rendered by the operation of the mine. "It is established by the cases," says Cotton, L. J., in West Cumberland Iron & Steel Co. v Kenyon, L. R., 11 Ch. Div., 782, at page 789, "that taking out minerals is a natural use of mining property, and that no adjoining proprietor can complain of the result of careful proper mining operations." And in the same case, Brett, L. J., says at page 787: "The cases have decided that, where that maxim (sic uter tuo utalienum non laedas) is applied to landed property, it is subject to a certain modification, it being necessary for the plaintiff to show not only that he has sustained damage, but that the Defendant has caused it by going beyond what is necessary in order to enable him to have the natural use of his own land."

Such showing has not been made against the coal company—far from it.

The subject under discussion here has been found interesting and is one which substantially affects a very important industry of this country, and it is hoped that this cause may be taken to and determined by the court of last resort in this jurisdiction.

However, in the instant case it is clear that the jury having found the facts in favor of the defendant below the trial court's instruction on the measure of damages was not prejudicial to the substantial rights of the plaintiff in error, for the reason that evidently the jury never reached the question of damages and the requests to charge before argument below by the defendant are not prejudicial to plaintiff in error, and in view of the fact that the claimant here voluntarily placed herself within the range of the alleged nuisance, and in view of the further fact that the testimony shows that the trouble, if any, had not been aggravated by continuing to dump slack and refuse on any mine fire that might have been burning, and also in view of the further fact that the jury evidently found that either there was no smoke rendering it unpleasant for the claimant in person or damaging her property, or if there was any damage that it resulted from some other cause. Therefore, in any event, the plaintiff in error is not entitled to recover in this case. The conclusion must be that the jury was fully justified in rendering the verdict which it did, and for the reasons given the motion for a new trial was properly overruled. It follows that the judgment must be affirmed, and it is so ordered.

ROBERTS and WASHBURN, JJ, the latter of the Ninth Appellate District, concur.