JOHN RUSH ET AL., APPELLANTS, V. SMITH-LOCKWOOD
MANUFACTURING COMPANY, APPELLEE.

FILED JANUARY 30, 1914.   No. 17,460.

Nuisance: INJUNCTION: EVIDENCE. In this an action to restrain the
operation of a hide-dressing and leather manufactory as a nuisance
on account of the exhalation of noisome and offensive odors, the
evidence is *held* insufficient to warrant the issuance of an injunc-
tion, and the judgment of the district court is affirmed.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE.   *Affirmed.*

*Alvin F. Johnson* and *Mahoney & Kennedy,* for appel-
lants.

*DeBord, Fradenburg & Van Orsdel, contra.*

LETTON, J.

This is an action for an injunction to prohibit the de-
fendant from using certain property in the city of Omaha
as a tannery, for the purpose of receiving, tanning or
preparing fresh hides, or in any manner so as to inter-
fere with the comfortable and reasonable use and enjoy-
ment by the plaintiffs of their property in the vicinity.
The petition sets out the ownership by the plaintiffs of a
family home of the value of $9,000 lying to the northwest
of the defendant's factory, and also of an apartment
building to the south and of cottages to the east, all oc-
cupied by tenants, and of the value of $40,000; that the
defendant conducts a whip manufactory, and in conjunc-
tion therewith a tannery; that it permits hair, flesh, or
other refuse from hides to accumulate; that the work of
the factory is done and will continue to be done in such
a manner that it fills the air in that locality with offensive
and unhealthy stenches; and that the locality is residen-
tial in character. It is also alleged that plaintiffs pur-
chased and improved their property before the factory

Rush v. Smith-Lockwood Mfg. Co.

was established, and that if it continues to be maintained their property will be greatly diminished in value, and that plaintiffs have attempted to have the city council and health commissioner abate the nuisance, but without avail. Defendant's answer denies the existence of the alleged nuisance, avers that after certain changes and improvements were made the city authorities determined that the plant was not a nuisance and that the business was not offensive or unhealthy. An estoppel is also pleaded on the ground that the plaintiffs with knowledge of the facts stood by and without objection permitted the defendant to expend large sums of money in the purchase and establishment of machinery in the business; that Thirteenth street, where the factory is situated, even before the plaintiffs bought their property, was a business street and has so remained. In a supplemental answer the defendant pleads that at the time of bringing the suit certain changes for the betterment of the plant were being made; that since that time it has purchased new property in connection with the plant, and built a large addition thereto; that it has removed all the old vats, and constructed others which are new and sanitary, and that the whole plant is now maintained in excellent condition.

An immense amount of evidence was taken at the trial, which lasted three weeks, and more than 70 witnesses were examined. The court found, in substance, that the factory lies on Thirteenth street about one mile south of the retail district of the city of Omaha; that a double line of street cars runs on said street; that the street is of a distinctly business character to within three blocks north of the factory, and from that point southward there are several business buildings, but that the buildings in the main are residential in character; that the factory building was erected before the plaintiffs purchased their flats nearby, but was not used as a factory until 1904; that it was vacant at the time plaintiffs' flats were built; that in the spring of 1909 for a short time there were offensive odors from the factory on account of offensive matter placed on the premises during the winter time which

thawed out in the spring, but that the condition was cleared up and all offensive odors removed six or eight months before this suit was brought. The court also found that several thousand dollars had been spent before the suit was brought in erecting ventilator pipes, closing up area-ways, and improving the sanitary condition of the factory; that since the suit was brought the defendant has expended upwards of $10,000 in further improvements, and that its present equipment is as nearly as possible sanitary and in no respect a nuisance. The injunction was refused.

At the close of the evidence the court stated he would take the case under advisement, and suggested that he would go to the vicinity of the factory if plaintiffs' counsel would advise him when the odors were pronounced or perceptible. Specific objection was then made by the plaintiffs' counsel to the court making a personal examination. The court then said: "Unless it is by consent, I will not go down and view the premises as a part of the trial." On May 2, the court requested the parties interested to appear in court, and at that time rendered an oral opinion, examining and dissecting the evidence, and found generally for the defendant. This decree was set aside, special findings were requested and made, and the present decree entered on July 1. In that opinion the court made the statement: "I did not go to inspect the premises. I will, however, say to the parties and the attorneys that I have been down in the neighborhood on a number of occasions, and if I had discovered any odors I think I could have decided the case upon the testimony of the plaintiffs' witnesses, and, of course, that is all I have before me. I did not go into this factory, but I have been by it on a good many occasions when they were operating it and when they were not." The judge also stated he had been by the plaintiffs' residence when the wind was blowing from the direction of the factory, and that he went into a like factory near-by and observed the process.

A motion for a new trial was filed, which contains, in addition to the usual complaints, specific assignments of

error that the court erred in making personal examinations of the locality and of another tannery in the neighborhood without the plaintiffs' knowledge or consent and against their objection. Two points are thus presented for our consideration: First. What findings of fact should this court reach upon the evidence? Second. Was the action of the trial judge in visiting the locality and the other tannery so erroneous as to require a reversal? Of course, if the evidence leads us to the same conclusion as it did the trial judge, the latter assignment need not be considered.

We have no doubt that the operation of a factory of this kind in a residential neighborhood would ordinarily operate to reduce the value of property in the vicinity. The very name of tannery or hide-dressing factory suggests unpleasant odors, and people are not likely to rent or to purchase property for homes in the neighborhood of such industries when better can be had, and yet, the presence of such an industrial establishment in some quarters of a city might tend to increase the rental value of moderate-sized dwellings or apartments. But the establishment is not what is usually known as a tannery. The evidence shows that the defendant is engaged in the manufacture of whips, bridles, belts, etc., a large proportion of which are manufactured from what is known as rawhide. It purchases salt hides to the extent of 25 to 40 a day from the packing houses at South Omaha and local dealers. These hides are put into a vat of water to soften them, then into a revolving wheel holding about 50 hides into which water is turned for the purpose of washing the loose dirt away. They are then placed in vats of strong lime water, where they remain for some time. After being removed, they are washed and the hair and any flesh that may remain is removed by scraping. The hair is put in barrels each night and removed as garbage. The fleshings, of which about a barrel a day accumulate, are also collected, saturated with a lime solution, placed in barrels, and about once a week are shipped to a glue factory in Chicago. After being scraped, the hides are again

washed and put into a solution of alum, where they soak from eight to ten hours, and are then dried. The subsequent processes depend upon what use is to be made of the leather. Some are kneaded with tallow by a machine, and some are tanned by the use of chrome salts and other chemicals and finished with an oil preparation. The processes are speedy and entirely different from the usual method of tanning by tan-bark, etc., which takes months where this process takes days.

It is apparent that odors are rife in and about the factory. There is a strong odor of lime; there must inevitably be more or less effluvium arising from the fleshings and from the hides after being softened, especially in warm weather; the various chemicals used in the process are more or less odoriferous, and the components of the finishing oil described as "oleo substitute" have each their distinctive smell. It is clear that the odors in the factory would be offensive in and about a residence. This, however, is not decisive of the question presented. The trouble is not with the odors which exist in the factory, but with those which escape, and the question is: How offensive are such odors, and are they disseminated to such an extent as to cause a special injury to the plaintiffs other than that suffered by the public at large? It is impracticable to set forth in this opinion even a small modicum of the testimony upon this point. It may be said, however, that a number of residents in the vicinity of the factory testified to facts which, if unexplained or uncontradicted, would amply justify a court of equity in enjoining the continuance of the operations as formerly carried on. On the other hand, a much larger number of witnesses testified that they detected no offensive or unsanitary odors or smells, and failed to see anything of the nature of a nuisance about the premises. Several witnesses testified to noxious odors in 1909, more perhaps in that year than at any other time, but others testified that the changes that were thereafter made in the manner of disposing of the refuse and in the operation of the factory were instrumental in preventing the escape of

offensive odors beyond the factory. Whether the occasional suffocating odors described in the testimony of the witnesses living south of the factory were brought by a north wind from the smelter to the north of the city, or whether the noisome smell detected by other witnesses when a south or southwest wind was blowing came from the factory or from the packing-houses at South Omaha is a matter as to which there must inevitably be some doubt. The testimony of the witnesses seems to depend very largely upon their interests, their nationality, their manner of life, and their environment. Many of the defendant's witnesses are Bohemians, who testify that in their homes they make no attempt at ventilation in the winter season and who have been accustomed to work in factories or packing-houses. Some of Mrs. Rush's former tenants testify they vacated her apartment house on account of offensive odors, while a number of the present tenants testify strongly for the defense. The plaintiffs have shown that their property in that locality has depreciated in value since the time it was purchased, but it is also shown that it was bought 20 years ago during what are known as "boom times," and that it has never been worth as much as was paid for it from that time to this. The factory building in 1904 sold at a low price at a tax sale, and the starting of this industry thereafter is shown by some of the witnesses to have increased the rental value of the property in the neighborhood. We cannot believe that there is no smell in connection with this factory, but we doubt very much whether the odors which escape therefrom are so noxious and injurious and have so reduced the value of plaintiffs' property or the comfort of their residence as to warrant the issuance of an injunction. It should be a clear case to justify a decree which would entail such grave consequences upon the defendant.

Taking all the testimony together and independent of the remarks made by the trial judge as to the result of his visits to the neighborhood of the factory, we believe that the plaintiffs have failed to establish the allegations of

their petition by a preponderance of the evidence. We find it unnecessary to express any opinion as to whether his action was erroneous. In 1909 it is probable that an injunction would have been justified, and, unless diligence is used in the future to prevent the escape of noxious odors, the plaintiff may be entitled to apply for relief; but as the evidence stood at the close of the trial we are of opinion that the judgment of the district court was right. It is therefore

AFFIRMED.

ROSE, FAWCETT and SEDGWICK, JJ., not sitting.