GRZELKA *v.* CHEVROLET MOTOR CAR CO.

1. NUISANCE—INSTRUCTIONS—FACTORIES.

In action for damages to plaintiffs' two-story, two-family frame flat, located in an industrial district on a lot 400 or 500 feet from one of defendant's plants for manufacturing crankshafts, instruction that liability for damages for nuisance under circumstances would arise only if there was an unreasonable amount of smoke, noise, vibration or fumes that has caused damage to plaintiffs' building and enjoyment thereof *held,* reasonably fair to plaintiffs.

2. EVIDENCE—HEARSAY.

Testimony of landlord as to reasons given him by tenants for moving out of his two-story, two-family frame flat building, located in an industrial area, *held,* properly excluded as hearsay, in plaintiffs' action against factory owner for alleged nuisance caused by smoke, noise, vibration and fumes.

3. SAME—OPINIONS—QUALIFICATIONS.

Opinion testimony of one plaintiff and his daughter as to cause of damage to plaintiffs' frame flat building 400 or 500 feet from defendant's crankshaft factory *held,* properly excluded as to receipt of testimony before qualifications were shown.

4. APPEAL AND ERROR—NUISANCES—PLASTER CRACKS—TESTIMONY OF GENERAL CONTRACTOR.

In action to recover for damages to plaintiffs' two-story, two-family frame flat building because of maintenance of alleged nuisance by defendant, exclusion of testimony of witness who had had 30 years' experience as general contractor as to his opinion of cause of cracks in plaster *held,* not sufficiently prejudicial as to justify reversal and granting of a new trial, where his testimony was largely on the matter of damages, plaintiffs had two other expert witnesses and contractor had not, technically speaking, qualified as an expert; although the ruling might well have been otherwise (3 Comp. Laws 1929, § 15518).

5. Nuisance—Abatement—Methods of Unknown Efficacy—Evidence.

   In action for damages because of maintenance of alleged nuisance in part caused by vibration from hammers capable of delivering 100,000-pound blows, contention that exclusion of testimony of plaintiffs' expert witness, that there were machines or hammers by which the work could be done practically without vibration, was error *held*, without merit, where such witness was the inventor of such a machine but was unable to show its practicability had been demonstrated as defendant is not obliged to employ means of abating a nuisance which are of unknown efficacy.

6. Appeal and Error—Trial—Conduct of Counsel—Reprimand.

   Trial court's reprimand of and remarks to attorney for asking a witness questions before the witness had answered previous questions *held*, justified by attorney's aggravating attitude but not to have exceeded court's authority nor to have prejudiced plaintiffs' case.

7. Trial—Comments on Evidence—Court Rules.

   Trial court, in action for damages for maintenance of an alleged nuisance because of vibration, smoke, noise and fumes, in making comments on evidence as to alleged smoke nuisance *held*, not to have exceeded the bounds of propriety as such comment is permissible under court rule, especially where jury is cautioned that they were not bound by court's comments concerning the testimony and further, that if they found an unreasonable amount of smoke, such as interfered with the reasonable use of plaintiffs' premises, the testimony would establish a nuisance (Court Rule No. 37, § 9 [1933]).

Appeal from Wayne; Miller (Guy A.), J. Submitted June 16, 1938. (Docket No. 83, Calendar No. 39,609.) Decided October 5, 1938.

Case by Michael Grzelka and wife against Chevrolet Motor Car Company, a division of General Motors Corporation, a Delaware corporation, for damages for injury to dwelling by alleged noise, vibration, smoke and fumes. Verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

*Frederic T. Harward, Robert Wojcinski* and *Leon Dreifuss,* for plaintiffs.

*Butzel, Eaman, Long, Gust & Bills* (*Rockwell T. Gust* and *Clifford W. Van Blarcom,* of counsel), for defendant.

NORTH, J.   This is an action to recover damages for injury to plaintiffs' home claimed to have been caused by the maintenance of an alleged nuisance by the defendant Chevrolet Motor Car Company.   The case was tried by a jury.   A verdict was rendered in favor of defendant and plaintiffs have appealed.

In 1923 plaintiffs built a two-story, two-family frame flat on a lot which they had purchased in the preceding year.   This is located in the city of Hamtramck at 8556–8558 Lumpkin avenue, which is in an industrial district.   In addition to the defendant's shops the plants of the Murray Corporation, Acme Paint and Lead, and American Radiator Company are located in the vicinity.   The Grand Trunk and Michigan Central railroads have railway connections for serving defendant's plant and the other industries in the district and considerable switching is done in the area.

The Chevrolet Motor Car Company owns an 84-acre tract of land, the eastern boundary of which is St. Aubin avenue, this being one block west of plaintiffs' residence on Lumpkin avenue.   In 1918 defendant's plant No. 1 was built.   Originally it was comprised of two buildings 600 feet by 75 feet, which were later (1926) enlarged, and an office building 200 feet by 150 feet.   This was a considerable distance from the premises subsequently acquired by plaintiff.   No complaint of annoyance from defendant's operation of its shops was made between April, 1923, when plaintiffs first occupied their home, and

1928. In 1928 defendant built its plant No. 2 on the eastern end of its premises, near St. Aubin avenue and 400 or 500 feet from plaintiffs' home. Here all the crank shafts for the Chevrolet Motor Car Company are made. The crank shafts are made and shaped with huge hammers. One hundred and thirty of these hammers, varying in size and weight from 1,500 to 12,000 pounds, are in operation in the plants. There are five of the 12,000-pound hammers, each capable of delivering a blow of 100,000 pounds. The concussion from the blows of the 130 hammers, and particularly from the 12,000-pound hammers, produces vibrations in the surrounding area of sufficient intensity to cause plaintiffs' house to quiver. Plaintiffs' testimony is to the effect that these vibrations cause the windows in their house to rattle, that the dishes rattle unless securely packed, that pots and kettles on the stove rattle, that the beds shake, that a chandelier was shaken so it fell, that the pictures on the wall have to be straightened every day, that the brick work on the front porch is cracked in several places, and that the plaster has been cracked and loosened in all the rooms and needs replacing. Plaintiffs also assert that the enjoyment of their premises is greatly impaired by the noise resulting from the use of defendant's hammers. Plaintiffs further complain of excessive smoke and fumes emitted from plant No. 2. In this plant there is one furnace for each hammer, and in addition six heat-treating furnaces, or 136 in all. The smoke is claimed to be especially bad on Sunday evening at which time the fires in the furnaces, which are allowed to go out at the week end, are started again.

There is testimony in behalf of defendant that precautions have been taken and large sums of money expended in an effort to minimize and to

eliminate as far as possible damages resulting to neighborhood property from its operations, and defendant introduced testimony to the effect that the vibrations from its plant were not of sufficient intensity to damage plaintiffs' property and that the damage complained of was caused from the natural settling of the building and other natural causes. They also denied that an excessive and unreasonable amount of smoke is emitted from the plant.

The question of the reasonable use by defendant of its premises for industrial purposes was submitted to the jury and they were carefully and fully instructed by the trial court as to the rights and duties of plaintiffs and of defendant in the reasonable use of their premises. We quote the following from the charge to the jury:

"When the plaintiffs moved into this neighborhood they moved into a manufacturing neighborhood, and when they moved into that kind of a neighborhood they were bound to accept its ordinary and reasonable discomforts and annoyances as a part of the price which they paid for getting into a neighborhood close to work that either they or their tenants might be desiring to engage in. In other words, they went in with full knowledge that they were going into a place where there would be smoke, where there would be noise, where there would be railroad trains moving to and fro, and as to all of the ordinary and reasonable annoyances of that kind of a neighborhood. They took their chances and they cannot complain. The only thing that they can complain of in connection with the enjoyment of their premises is an unreasonable amount of annoyance from noise, from vibration, from smoke and vapor fumes that are generated at the defendant's furnaces. They came in anticipating a reasonable amount of noise, smoke, disturbance, and dirt. If,

however, the defendant is shown by the testimony to have generated an unreasonable amount of noise, if it is shown by the testimony to have engendered and sent into the earth an unreasonable amount of vibration, then the unreasonable noise, the unreasonable amount of vibration would be the basis for a finding of the existence of a nuisance, provided it interferes with the reasonable enjoyment by the plaintiffs and their tenants of the premises as homes. The plaintiffs cannot recover for ordinary annoyance incident to a manufacturing district. They are entitled to recover for an extraordinary amount of noise and vibration that is not reasonably due to the existence of a manufacturing district. In the same way the similar rule would apply to the engendering of noise and smoke and noxious gases. The defendant company has a right to maintain its furnaces and maintain them in a reasonable way. * * *

"If you find there has been an unreasonable amount of vibration that has damaged the building, or, if you find that there is an unreasonable amount of noise and vibration which interferes with the personal comfort, unreasonably interferes with the personal comfort of the people living in the house, or, if you find that there is an unreasonable amount of smoke and gas emitted which interferes with the reasonable use of the house, or, if you find one or all three of those situations exist, then the testimony will have established the existence of a nuisance and you will come to the question of damages."

The trial judge instructed the jury in further detail along the same lines as above quoted. It thus appears from this record that the controlling issue of whether defendant was guilty of having created and maintained a nuisance to plaintiffs' damage was submitted under a charge which we think was reasonably fair to plaintiffs and the verdict was in favor of defendant. Unless prejudicial error appears

from the assignments of error bearing upon this phase of the case, the judgment entered in the trial court must be affirmed.

Among the reasons assigned in support of this appeal are plaintiffs' complaint that opinion or expert testimony which was sought to be elicited from certain witnesses was excluded, and there is also complaint that plaintiff Michael Grzelka was not permitted to testify as to the reason given to him by tenants for moving out of the premises. This latter testimony, being hearsay, was properly excluded; and the former, insofar as it barred receipt of the testimony of plaintiffs' daughter and of Michael Grzelka before his qualifications were shown, was proper.

Plaintiffs also offered the testimony of one Heide as to whether or not the vibrations of which plaintiffs complain caused the cracks in the plaster. This witness had been in the general contracting business for 30 years. He had examined properties which had been damaged by vibrations and had testified as an expert in other litigation of similar character. Notwithstanding this showing of qualification the objection of defendant's counsel to the competency of this witness to give opinion testimony was sustained by the court. While we think the ruling might well have been otherwise, still under this record it cannot be said the ruling of the court was sufficiently prejudicial to justify reversal. 3 Comp. Laws 1929, § 15518 (Stat. Ann. § 27.2618). For the most part the testimony of this witness was directed to the question of damages. As stated above the jury found defendant not guilty of creating and maintaining a nuisance. Therefore the question of damages did not become pertinent to the jury's deliberation. Further this witness without objection testified quite

in detail as to the damaged condition of plaintiffs' property and as to the vibrations being noticeable to one on the premises and further without objection he gave the following testimony:

"*Q.* Do you know of any other way than vibration that the key or clinch of plaster work can be demolished as this was?

"*A.* No, it cannot, only by vibration.

"*Q.* How severe was the vibration that you felt during the hours that you were there examining this building and other buildings in the vicinity?

"*A.* I have been up there several different times. Sometimes it is worse than others. The day I was up into this building it was bad, between two and five in the afternoon. It is not as bad then as it is other times because I have been there in the evenings. That is when I find it is the worst. I have been up there about 15 or 20 times in the last, I would say, six months.

"*Q.* How did you know the building was vibrating?

"*A.* I can tell by the quiver and you could hear the sound of the hammers. You could see several things shake. There was a teapot on the stove that was quivering all the time, and there was a fern in the dining room that was a continual quiver. These hammers, you could hear them just as plain as you could hear a horn on an automobile outside.

"*Q.* Was the vibration almost simultaneous with the sound of the hammer?

"*A.* Yes, sir, it was."

Immediately following the above testimony the witness was asked:

"Now, that you have described the vibration, was that sufficient, in your opinion, to have demolished the key of this plaster work?"

Technically the ruling of the court can be justified on the ground that the witness had not qualified himself to express an opinion as to what character or what amount of vibration would "demolish the key of the plaster work." While, as just stated, we think the testimony of the witness might well have been received, and its weight left to the jury, still in view of the extent and character of the testimony given by this witness and also the further fact that plaintiffs were permitted to cover their case by two other expert witnesses, this ruling of which appellants complain was not, under the circumstances of this record, such as to justify reversal and a new trial.

There is no merit to appellants' assertion of error in the ruling of the court excluding the testimony of one of plaintiffs' experts by which plaintiffs sought to show there were machines or hammers by which this type of work could be done and resultant vibration practically eliminated. The witness was the inventor of such a machine but was unable to show that its practicability had been demonstrated or that it was in anything like common or general use. We think the inference from this record is that the machine at best is still only in a stage of development and being experimentally used. Under the circumstances the ruling of the court was not erroneous as defendant is not obliged to employ means or resort to methods of unknown efficacy.

Plaintiffs assert prejudicial error in that the circuit judge reprimanded their attorney for asking a witness questions before the witness had answered previous questions. We think the record discloses that this reprimand was more in the nature of a suggestion, and that the remarks of the circuit judge which followed it were prompted by the somewhat aggravating attitude of the attorney. In any event

the trial judge certainly did not exceed his authority and we are convinced that his attitude did not prejudicially affect plaintiffs' case. *Madalinski* v. *Hill,* 277 Mich. 219.

The circuit judge when instructing the jury commented on the evidence in regard to the alleged smoke nuisance. In so doing the judge did not exceed the bounds of propriety. Within proper limitations such comment is permissible practice in this jurisdiction. Court Rule No. 37, § 9 (1933); *Horbal* v. *Tyter,* 276 Mich. 242. In this connection it may be noted the trial judge cautioned the jury that they were not bound by his comments concerning the testimony; and further that if the jury found an unreasonable amount of smoke, such as interfered with the reasonable use of plaintiffs' premises, such testimony would establish a nuisance. There is no merit to appellants' complaint in the above particular.

Our review of this record discloses no prejudicial error. Therefore the judgment entered in the circuit court is affirmed, with costs to appellee.

Wiest, C. J., and Bushnell, Sharpe, Potter, Chandler, and McAllister, JJ., concurred. Butzel, J., took no part in this decision.