CHARLES A. WALLING ET AL., APPELLEES, V. CITY OF FRE-
MONT, APPELLANT.
293 N. W. 226

FILED JULY 5, 1940.   NO. 30835.

*John F. Rohn* and *A. C. Sidner,* for appellant.

*Flansburg & Flansburg* and *E. L. Mahlin, contra.*

Heard before SIMMONS, C. J., EBERLY, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

In this, an appeal from the district court for Dodge county, the plaintiffs sue to recover damages arising from the claimed creation and operation of a nuisance, alleging in substance that plaintiffs were the owners of certain premises upon which were situated a lumber and coal yard together with a residence and office building combined, which premises were used for the business and residence of the plaintiffs, and that there were situated thereon buildings and structures used in carrying on a lumber and building material business, and a part of which was used for residence property and business office; that the defendant city, owning and using adjacent property for the purpose of a coal yard, did in December, 1936, install thereon a tipple and

various machinery for the unloading and moving of coal, and that the operations carried on by defendant in unloading the coal from railroad cars and the subsequent handling of it caused large quantities of fine penetrating coal dust to fall upon plaintiffs' premises and as a direct and proximate result thereof their furniture, fittings and the whole interior of the dwelling-house, buildings and office have at all times since the erection of the tipple continued to be covered with coal dust so that incessant cleaning was made necessary, and that because of the coal dust they were forced to keep their doors and windows closed. Plaintiffs further allege that the tipple caused loud, annoying noises at different hours of the day and night and ask damages in respect of the foregoing matters, but more particularly on the grounds that as a direct and proximate result of the nuisance created by the defendant the lumber and other merchandise of plaintiffs were constantly covered and blackened with coal dust which materially damaged the salability thereof and rendered the carrying on of the plaintiffs' lumber business burdensome and unprofitable, rendering the plaintiffs' premises unfit as a location therefor or for a dwelling-house or office use. The plaintiffs claim damage by reason of defendant's acts to plaintiffs' property and improvements and the stock of lumber, asking a recovery in the total amount of $19,000.

The defendant answered denying plaintiffs' allegations and claims and alleging that plaintiffs themselves were engaged in the retail coal business, and that coal dust from their own coal and also from the near-by premises of the Fremont Ice and Fuel Company and from railroad trains operated in the vicinity were responsible for conditions complained of by plaintiffs, and that whatever coal dust emanated from defendant's coal yard was only a small part of the total which settled upon the plaintiffs' property. Defendant also alleged that plaintiffs lived in a noisy neighborhood near three railroad tracks and the noise from engines and passing trains was of more consequence than any emanating from the machinery of the defendant and denied

that the operation of the coal yard had at any time constituted a nuisance.

The trial of the case occupied approximately ten days' time, a large number of witnesses testified on both sides and resulted in a verdict in favor of the plaintiffs in the sum of $3,000, for which amount judgment was entered and this appeal by the defendant city follows.

The property involved and which it is claimed constituted the nuisance is a coal yard and tipple. According to the testimony this coal yard is of irregular shape approximately 150 by 150 feet in area which was "pretty well all covered" by coal and the pile in some places was higher than the near-by lumber sheds or "16 to 18 feet high, perhaps more," and distributed by means of a drag line arrangement. The "Tipple" is an elevator-like structure some 60 feet in height and used to put coal into the yard when unloaded from railroad cars and to distribute it around therein. The processes in this operation are stated as: Dumping from the car, elevating to the top of the tipple, pouring out through a spout onto the pile, dragging out into the yard, dragging back, raising to the container, dumping again and running out through the spout into a truck. All the coal used at the city plant comes through the tipple. The tonnage purchased by the city from the previous August first to the time of the trial in June, 1939, was in excess of 11,000.

In the presentation of the case in this court in the appellant's brief, ten propositions are urged. Preliminary to the particular discussion, however, it may be well to call to mind the principle of law succinctly stated in 20 R. C. L. 463, sec. 80, to wit: "It seems to be undisputed that a person may maintain an action at law for damages caused by a nuisance; and this, without praying an abatement of the wrong." It is also stated therein furthermore that in a court of equity where jurisdiction is acquired "of an action to enjoin a nuisance and for damages, the fact that the nuisance has been abated voluntarily since the bringing of the action and that it is not likely to be renewed are held not to deprive the court of jurisdiction to retain the cause

to award damages for the injury already done." *Id.* 483, sec. 96.

Proposition 1 is to the effect that there was error in that the trial court in instructing the jury did not use the terms "reasonable" or "unreasonable" in reference to the annoyances caused or quantity of coal dust distributed, and did not use the words "seriously" or "material" in reference to the damage inflicted. In support thereof are cited *Francisco v. Furry*, 82 Neb. 754, 118 N. W. 1102; *Rush v. Smith-Lockwood Mfg. Co.*, 95 Neb. 133, 145 N. W. 268; *Mathews v. Mozer*, 111 Neb. 71, 195 N. W. 943; *Grzelka v. Chevrolet Motor Car Co.*, 286 Mich. 141, 281 N. W. 568; *Steele v. Rail & River Coal Co.*, 42 Ohio App. 228, 182 N. E. 552. The Nebraska citations are all of cases wherein injunctions were sought and, although stating propositions applicable in general to this sort of situation, are not particularly applicable to this litigation. Thus, in the *Francisco* case it is said: "The right to have the air floating over one's premises free from noxious and unnatural impurities is a right as absolute as the right to the soil itself. * * * A feeding yard is not necessarily a nuisance, and it becomes such only after being improperly maintained or conducted." In the *Rush* case we find: "We doubt very much whether the odors which escape therefrom (a tannery) are so noxious and injurious and have so reduced the value of plaintiffs' property or the comfort of their residence as to warrant the issuance of an injunction." In the *Mathews* case, in which it was sought to obtain an injunction and recover damages, the court found that the plaintiff did not suffer pecuniary damage, but defendant did at times fail to exercise proper care in the conduct of his business, and enjoined defendant from killing animals on the premises or permitting the accumulation of refuse and in any manner maintaining the plant as a nuisance, and the judgment of the trial court was affirmed except in the matter of taxation of costs.

We find nothing in these Nebraska cases to operate against the prosecution of the present action, but rather the contrary; and they in no wise foreclose the situation to

the plaintiffs so far as concerns the prosecution of an action to recover damages.

An instruction derived from the *Grzelka* (Mich.) case was tendered, but in it the facts recited are the reverse of the present situation. These plaintiffs did not move into a neighborhood and find a nuisance there. The nuisance came to them. Also, that instruction came too close to argument or comment upon the evidence to be permitted in this jurisdiction. The instruction derived from the *Steele* (Ohio) case, in so far as proper, was covered by instruction No. 8, given by the court, which also was No. 5 requested by defendant and is hereinafter set out.

We find no necessity for the use in the instructions of the particular words in reference to which complaint is made; and we are of the opinion that the trial court adopted the better course that, instead of directing the jury toward a problem of deciding just how much annoyance or noise or how much coal dust might be reasonable under the circumstances, or how much damage might be substantial or material, their attention was directed to the fundamental questions of what it took to constitute a nuisance, which was properly defined to them, and the determination of what amount of damage, if any, had been suffered.

Propositions 2 and 3 are to the effect that the nuisance, if any was established, was not a permanent but a continuing or temporary nuisance subject to abatement and that under a petition based upon the theory of a permanent nuisance no recovery could be had. The brief states: "It is our contention that since no competent evidence was offered by the plaintiffs as to a continuing nuisance, if any, and no instruction from the court applicable to a continuing nuisance that plaintiffs have failed to make out a case even if the facts are sufficient to show a continuing nuisance and that therefore regardless of whether there was or was not a continuing nuisance, plaintiffs have no cause of action." In support of this are cited the cases of *Conestee Mills v. City of Greenville,* 160 S. Car. 10, 158 S. E. 113, 75 A. L. R. 519; *McGill v. Pintsch Compressing Co.,* 140 Ia.

429, 118 N. W. 786, 20 L. R. A. n. s. 466; *City of Ada v. Melberg,* 135 Minn. 130, 160 N. W. 257; 20 R. C. L. 466, sec. 82. In this last citation it is said: "It is conceded to be a difficult and complicated task to distinguish between nuisances that are permanent in character and those that are not permanent, within the rule above stated," and we are in agreement with that proposition. Furthermore, we perceive no necessity to judicially attach to the nuisance in the present case any particular label.

We turn to the jurisdiction of Iowa in the case of *Irvine v. City of Oelwein,* 170 Ia. 653, 150 N. W. 674, where we find:

"The trial court had considerable difficulty with the case, and we too find it full of trouble, because of the conflicting character of the cases from other states, and an apparent want of harmony in our own decisions. This is due largely to the fact that there are all kinds of nuisances and that the distinction between trespass and nuisance has not always been preserved."

The court then states that, as a general rule, if the thing determined to be a nuisance is so erected that it is intended to remain in the condition in which it was erected until destroyed by the elements, and the damages are to the land itself, the damage is treated as original and is to be recovered in one action, and proceeds: "As heretofore pointed out, it is sometimes optional with the party injured to treat the nuisance as permanent or continuous, at his election, but much depends upon the character of the nuisance. If the erection or structure be permanent, but injurious because of the use made of it, or if the nuisance be a mere trespass, and the trespasser did not have and could not acquire any rights in the premises, save by grant or prescriptive use, it is, as a rule always permissible for the party injured to elect what remedy he will pursue. If he cares to have the nuisance remain or to recognize the trespass, he may have as his damage that which will make him whole because of the depreciation in the value of his property; but in such cases he is not entitled to have the nuisance abated."

Also, the case of *Risher v. Acken Coal Co.*, 147 Ia. 459, 124 N. W. 764, wherein it is said: "We have heretofore held that the plaintiff may elect whether he will treat the injury as permanent or continuing, and that the defendant may not complain of such election." In *Bartlett v. Grasselli Chemical Co.*, 92 W. Va. 445, 115 S. E. 451, we find: "In actions against counties, cities, towns and other municipal corporations, and railroad companies and other public utility corporations, clothed with the power of eminent domain, for injuries inflicted upon or done to real estate owned by private persons, by reason of the negligent or wrongful construction of their works, the cause of the injury is generally deemed to be permanent."

The right of election finds further support in the cited cases of *Chicago Forge & Bolt Co. v. Sanche*, 35 Ill. App. 174, and *Rhodes v. Durham*, 165 N. Car. 679, 81 S. E. 938.

Our own court in *Applegate v. Platte Valley Public Power and Irrigation District*, 136 Neb. 280, 285 N. W. 585, has, we believe, recognized the rule that should govern in this case. The syllabus is:

"As a general rule, if a nuisance is permanent in character, is intended to remain in the condition in which it was erected until destroyed by the elements, and the damages are to the land itself, especially where the erection is for a public or semi-public purpose, the damage is treated as original, to be recovered in one action, and not continuous in character.

"The measure of damages for the injury to the land is the difference in value before and after the dam was erected, taking into consideration the uses to which the land was put and for which it was reasonably suitable. To determine any such loss, the present condition of the soil proximately caused by the damming of the water and all the effects up to the present time would be relevant to determine its value."

There are many parts of the opinion particularly pertinent to the present inquiry. We paraphrase: Could the plaintiffs sell their land or merchandise for its full value

under the rule advanced by the defendant? Would a purchaser pay full value knowing he must continually be threatened with invasion by large quantities of coal dust from the yard and tipple? Even conceding the present efficient operation of the tipple and the use of a better quality of coal, would a purchaser, knowing that if the defendant or its employees failed in the future in that regard his property would be damaged, either temporarily or permanently, pay full value for the same? Obviously not. It follows that there has been permanent damage to plaintiffs' property.

Proposition No. 4 is to the effect that a showing of past transactions or profits of the business involved may be admitted in evidence, not as an independent element of damage, but for the purpose of showing the volume of business. This is what the plaintiffs sought, and were allowed by the court, to do; and the complaint in reference to this is not to the statement of the law as given, but concerning the admission of exhibit C in evidence. This exhibit C is a condensed statement of the transactions, volume and income covering the plaintiffs' business for the years 1934 to 1938, inclusive, and the criticism is that the court did not give an instruction limiting the consideration by the jury to that purpose, and that the showing as to the years after the construction of the claimed nuisance should not have been allowed; but we think the appellant was wrong on both propositions. As to loss of profits no contention of that kind was submitted in the case, so that the jury could not have been misled in reference thereto, and the showing for the later years of 1937 and 1938 was proper as an element indicating the effect had on plaintiffs' business following the construction of this coal yard and tipple. Proposition No. 5 is to the same effect.

Supporting proposition No. 6 the appellant argues that the damages the owner of the property might recover from the operation of the coal pile must come directly from that source and that any dust or noise coming from other coal yards, operation of trains, streets and roads must be elimi-

nated or nor considered. We can agree in substance with this proposition, but we fail to perceive that it offers any proper criticism of action taken in this case, and, in fact, the appellant cites in his brief a quotation from 46 C. J. 749, that, "Where damage is the result of the act of several persons acting independently, and not in concert, they are not jointly liable; but each is liable only for his proportion of the damages, and the fact that it is difficult to measure accurately the damage which was caused by the wrongful act of each contributor to the aggregate result does not affect the rule, nor make any one liable for the acts of the others, nor relieve defendants from liability. The jury may separate the damages with the nearest approach to accuracy under the circumstances."

This the jury appear to have done in the present case and were instructed by the court to the effect that their award, if any, must be based upon the results of the acts of the defendant city in the case. The appellant says in its brief it is its contention that the dirt and dust from all those other sources and the nuisance from the trains including whistling and ringing of bells is much greater than the inconvenience, if any, from defendant's coal pile. That was all included in the things submitted to the jury and there is apparently no dispute between the parties as to what the law is.

By proposition No. 7 the appellant argues that where a nuisance has been abated before the trial there can be no recovery of damages as for permanent injury; but with this we cannot agree, and see no reason why it should influence the recovery of damage for injury actually sustained before this had been done. *Mathews v. Mozer,* 111 Neb. 71, 195 N. W. 943; 20 R. C. L. 483, sec. 96. Also, the question of the abatement of the nuisance did not enter, except incidentally, into the case. The defendant's answer did not plead it except to a limited extent in asserting that certain improvements had been made in the equipment of the plant with new machinery and a change made in the type of coal furnished, so that the distribution of coal dust

by the plant "has been almost completely eliminated and under the plans of operation now in force and to be continued there will be practically no coal dust of any kind in the operation of said coal yard in the future." This can only be construed as an admission that there had existed to some extent the injury complained of and an allegation that it had been to some extent eliminated. The whole matter was submitted in the evidence to the jury and the court authorized by its instructions recovery of only for such injury and damage as had been inflicted by the acts and from the operations of the defendant.

Proposition No. 8 complains that there was included in instruction No. 1, in stating the issues, a reference to the fact that there was situated in the premises a small rental residence. This reference might perhaps as well have been omitted, but the contention that there is no such allegation in the pleadings is not sustained, because while the pleadings do not mention the rental residence specifically they do state that there were business and residential structures on the premises involved, which would allow evidence of such structures of whatever nature. However, there was no attempt to either designate or recover for any particular injuries to the small residential property which was referred to but incidentally in the evidence. Under the circumstances this reference could not have been prejudicial to the appellant.

Proposition No. 9 is to the effect that where there are conflicting instructions, one containing an incorrect and the other a correct statement of the law, the latter will not cure the former. We do not find the instructions given to be vulnerable to this attack and consideration is given in a more general discussion as to claimed errors in the instructions.

Proposition No. 10 is a complaint that the court permitted leading questions to be put to the witnesses, and a citation in support thereof is *Koehn v. City of Hastings,* 114 Neb. 106, 206 N. W. 19. It is also urged there was error in the matter of permitting a view of the premises by

the jury. These are both matters largely within the discretion of the trial court. We cannot discover that such discretion was in any wise abused by the court in the present instance.

The appellant also complains of the admission in evidence of exhibit E which was a petition to the mayor and city council signed by these plaintiffs and others, in reference to the coal dust trouble which is the foundation of this suit. This exhibit would not, perhaps, have been proper to be admitted as original evidence, but it was not so offered and was offered on the cross-examination of the witness Wright, superintendent of the city plant, after he on cross-examination had denied knowledge of any complaint in reference to the matter of this coal dust. We think that under the circumstances and the testimony given by this witness on direct examination the exhibit was properly admitted.

Under the title of errors in instructions the appellant continues the argument under proposition No. 9 above stated and makes certain objections to the instructions generally and specifically. In order to consider these, and endeavor to keep this opinion within due bounds, it seems necessary to first outline just how the court did submit the case to the jury.

The court gave in all 13 instructions. There were a number of instructions tendered on behalf of either party, some of which were given and some refused; but those given as instructions of the court may be outlined as follows:

In instruction No. 1 the court outlined the issues in the case substantially as hereinbefore stated; and by instruction No. 2 placed the burden of proof upon the plaintiff, stated the material facts which were established without dispute in the case, and added that the plaintiffs must prove by a preponderance of the evidence that the defendant by the erection of the coal yard and tipple had created a nuisance in so far as plaintiffs were concerned, and that plaintiffs as a proximate result of said alleged nuisance have suffered damage, and the amount of plaintiffs' damage, if any.

Instruction No. 3 states the issues raised by defendant's answer as far as necessary and that the defendant asks for a verdict in its favor. Instruction No. 4 defines the preponderance of the evidence; and instruction No. 5 defines proximate results as those that proceed directly from and as the natural result of the commission of an act. Instruction No. 6 defines what under the circumstances of this case would constitute a nuisance entitling the plaintiff to recover and is as follows:

"If you find from the evidence that the maintenance or operation of defendant's coal yard caused or allowed coal dust to be scattered over the plaintiff's premises in such amounts as would damage his property, real or personal, or would interfere with the natural use and enjoyment thereof by any person of ordinary, normal, or average sensibilities, or of ordinary tastes and mode of living, then you are instructed that such maintenance or operation of the coal yard would constitute a nuisance and the plaintiff would be entitled to recover in this action whatever damages are the natural and proximate result thereof."

Instruction No. 7 then refers to the matter of noise such as would disturb and annoy a person of ordinary sensibilities occupying the premises, and that that should be taken into consideration along with the matter of a charge of scattering coal dust, in making determination as to whether or not a nuisance exists.

Instruction No. 8 was requested by defendant and given as follows: "You are instructed that a coal pile, coal elevator, coal tipple, the operation of machinery in the handling of coal, coal yard, or a like place is not to be considered a nuisance in itself, although it may be located in a populous community, and such an establishment is not to be deemed in itself a nuisance. But if you find that the method of operation is such as to destroy the comfort of those living upon adjoining property same may constitute a nuisance as a matter of fact."

Instruction No. 9 was to the effect that, if the jury found from the evidence that the history of the operation of this

coal pile and machinery coupled with the presence of the coal pile and machinery immediately adjacent to plaintiffs' premises would constitute such a threat to the use of the premises as to impair its value in the market irrespective of any assertion or evidence that the present operation or future operation is such or will be such as to eliminate or greatly reduce the amount of coal dust that will be emitted from such coal pile and machinery, they were then instructed that the injury to the market value of plaintiffs' premises is permanent and they should assess plaintiffs' damages based on such depreciation in the market value of their premises as the jury find results from the nuisance of the defendant.

No. 10 instructed the jury that the determination of the liability of the defendant in this case in no way determines its liability as to any other person and would in no way affect the determination of any subsequent suits by other persons, which, if any, would be tried and determined solely on the basis of the evidence presented therein.

Instruction No. 11 was the usual instruction as to the credibility of the witnesses, and instruction No. 12 states the measure of damages and is as follows:

"If, from the evidence, and under these instructions, you find that the defendant created a nuisance as defined in these instructions, and as a direct and proximate result thereof, the plaintiffs suffered inconvenience, discomforts, and annoyances and burdens of cleaning, as set forth in the petition, then the plaintiffs are entitled to recover damages therefor, and you should include in your verdict such amount as you believe will fully and fairly compensate them for such damage.

"If you find that the defendant created a nuisance as defined in these instructions, and as a direct and proximate result thereof, damage has accrued to plaintiffs' land and improvements, then the plaintiffs are entitled to recover damages therefor, and the measure of such damages would be the difference between the fair and reasonable market value of the land and improvements thereon immediately

prior to the time the alleged injury occurred and the fair and reasonable market value of said property immediately after the alleged injury, if any, had become complete.

"If you find that the defendant created a nuisance as defined in these instructions, and as a direct and proximate result thereof the plaintiffs suffered damage to their stock of lumber, then the plaintiffs are entitled to recover damages therefor, and the measure of such damages would be the difference between the fair and reasonable market value of the stock of merchandise immediately prior to the time the alleged injury occurred and the fair and reasonable market value of the said stock of merchandise immediately after the alleged injury had become complete.

"In no event will you allow plaintiffs anything for damage to their health because no such damage has been proved.

"If you find for the defendant, you will return a verdict of no cause of action."

Instruction No. 13 is simply as to the selection of a foreman and return of a verdict.

There were certain instructions requested by each of the parties, and of those requested on the part of the appellant, number 1 is the instruction taken from the Michigan case of *Grzelka v. Chevrolet Motor Car Co.*, 286 Mich. 141, 281 N. W. 568, to which sufficient reference has already been made. Number 2 requested by the defendant is based upon the same premise as the one just considered, classifies the district in which the property involved in this suit is situate as a railroad district, and adds the proposition that any amount of noise or of coal dust must have been an unreasonable amount in order to be actionable, and that the plaintiff would only be entitled to recover for extraordinary amounts of noise and coal dust, but does not, nor do any instructions tendered, purport to furnish a standard to measure what would be reasonable or unreasonable under the circumstances. The trial court, as before stated and as we think was proper, did not put that feature in the case but let it stand upon the simple proposition that, if the defendant inflicted injury and damage to the plaintiffs

to the extent that it would interfere with the natural use and enjoyment of, and was such as to destroy the comfort of, plaintiffs occupying adjoining property and did lessen the market value of the plaintiffs' premises and merchandise, then the plaintiffs would be entitled to recover whatever damages were shown by the evidence to have been caused by defendant's acts. This, we think, was a proper statement, rather than to direct the jury on to the uncertain ground of speculating as to what would be reasonable or unreasonable amount of noise or dust, and the amount of the verdict returned demonstrates that the jury considered it a substantial injury. Those features may, therefore, be considered properly eliminated from the case.

Instructions Nos. 3 and 4 requested by defendant and refused relate to the defining of a nuisance and the abatement thereof and have been sufficiently considered. Requested instruction No. 6 was to the effect estoppel may have existed by the plaintiffs' knowledge that the defendant was erecting the tipple and had opportunity to object but failed to do so and therefore cannot recover in this action. This instruction is noted as having been offered at a late hour during the closing argument in the case; but its contents prevent it from being proper to have been given for the reason that no matter of estoppel is or had been otherwise raised in the case.

We come now to a consideration of matters pertaining to some of those instructions as to which we are not clear upon the record as to just what did happen. The transcript shows that on June 23 certain instructions requested and given were filed in the office of the clerk. These included Nos. 1, 2, 5 and 9 requested by plaintiffs and No. 5 requested by defendant. Now, those were all included verbatim and given in the instructions heretofore referred to as having been given by the court. The objection here made by the appellant to the giving of those requested by plaintiffs is that by so doing the subjects thereof were by repetition unduly emphasized. Whether these instructions were actually twice read to the jury and twice included in the file we do

not know, but the same thing also happened to No. 5 requested by the defendant and given, and in as much as these were all included in the instructions originally designated as given by the court we would ordinarily assume that a duplicate reading and submission of them would have been discovered and avoided at the time. If, however, they were inadvertently given in duplicate the same thing happened in reference to the instructions tendered by both sides and the contents of none of them are such that a mere repetition could in any manner that we can see work a prejudice to any one. Even assuming that they were so included and twice read to the jury, no complaint except as to overemphasis is made here and, due to the circumstances and the contents of the instructions themselves, we do not think any prejudice resulted to any one.

Considerable argument on behalf of both parties is devoted to a consideration of the evidence and of the weight and credibility that should be given to certain parts of it. As we have stated, this trial consumed approximately ten days, a large number of witnesses were examined and a large amount of testimony appears in the record. Naturally there are many matters of conflict and some, perhaps, of misstatement, but there is without doubt ample evidence in the record to sustain the verdict reached by the jury, and this court would be going far beyond its province to assert that the verdict is clearly wrong. It was the province of the jury to determine the facts. The case on the whole, we think, was properly submitted for that determination upon correct principles, and that no error prejudicial to the appellant has developed or been shown. The judgment of the trial court is therefore

AFFIRMED.