[Cite as *Brackett v. Moler Raceway Park, L.L.C.*, 2013-Ohio-1102.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

| | | |
|---|---|---|
| CORINNE BRACKETT, et al., | : | |
| Plaintiffs-Appellants, | : | CASE NO. CA2012-06-009 |
| | : | O P I N I O N |
| - vs - | | 3/25/2013 |
| | : | |
| MOLER RACEWAY PARK, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CVH 2008-0651

Critchfield, Critchfield & Johnston, Ltd., John H. Schaeffer, J. Douglas Drushal, Patrick E. Noser, 225 North Market Street, P.O. Box 599, Wooster, Ohio 44691, for plaintiffs-appellants

Keating Muething & Klekamp PLL, Joseph L. Trauth, Jr., Michael T. Cappel, One East Fourth Street, Suite 1400, Cincinnati, Ohio 45202, for defendants-appellees, Moler Raceway Park, Victor K. & Kimberly B. Moler, and Moler & Moler, LLC

**RINGLAND, J.**

{¶ 1} Plaintiffs-appellants, 41 Sterling Township residents (the "Residents") living in close proximity to the Moler Raceway Park, appeal the decision of the Brown County Court of Common Pleas awarding judgment to defendants-appellees, Moler Raceway Park, LLC, Moler & Moler, LLC, Victor "Kevin" Moler, and Kimberly Moler (collectively, "Moler") in a nuisance action.

{¶ 2} Moler owns 40 acres of land in Sterling Township on which a quarter-mile dirt track motor raceway is operated (the "Raceway"). There are neither zoning regulations nor noise ordinances in the township, but the Raceway is surrounded by trees in order to help with noise and dust. As adjoining landowners, the Residents brought suit against Moler on June 16, 2008, alleging that the operation of the Raceway constitutes a nuisance.[1] The Residents sought damages for loss of use and enjoyment of property and diminution of property values, as well as injunctive relief including, but not limited to, a complete shutdown of commercial activities at the Raceway.

{¶ 3} On May 3, 2010, a four-day bench trial commenced wherein 20 witnesses for the Residents and 22 witnesses for Moler testified. The testimony revealed that the Raceway is in operation approximately 25 days per year, holding racing events primarily on Friday evenings but occasionally also on Saturdays and Sundays. Each racing event consists of roughly 100 cars per night racing in four separate classes on a dirt track which is wetted down before the races begin. Each car that participates in a race must have a muffler. The Raceway opens around 4:30 p.m. with racing beginning at 7:00 p.m. and lasting typically until 12:30 a.m., although some race nights have extended until 1:45 a.m. During this time period, the Residents claim that the noise produced by the Raceway is loud enough to interfere with conversations held inside or outside their respective houses and disrupts their ability to sleep.[2] Furthermore, several of the Residents contend that "post-race activity," including honking car horns, can be heard as late as 3:30 a.m.

{¶ 4} In addition to the testimony of the Residents and other persons living around the Raceway, expert witnesses testified on behalf of both parties. The Residents' expert

---

1. This suit was initially brought by 38 individuals but, through amended complaints, the number of plaintiffs rose to 71. However, 30 individual plaintiffs were dismissed for failing to respond to discovery requests.

2. Although witnesses at the trial addressed concerns over noise, dust, lighting, traffic, and crowds, the Residents' appeal focuses solely upon noise.

witness, Eric Zwerling, is a noise expert who testified that noise from the Raceway was an "unnatural" sound with decibels (dBA) reaching levels that interfere with a person's ability to sleep. Moler's expert witness, Steve Rucker, is an industrial hygienist who testified that the sound from the Raceway is no greater than sounds emanating from other local events.

{¶ 5} On June 28, 2010, the trial court issued a decision denying the Residents' request for a permanent injunction to halt operations at the Raceway (the "2010 Decision"). Nevertheless, the trial court then determined that the Raceway could become a nuisance and, consequently, ordered several restrictions on further operation of the Raceway. These restrictions provided that all races must be completed by midnight and that racing may only be held on Fridays. Moler appealed the 2010 Decision and, on September 6, 2011, this court remanded the case to the trial court "to determine with clarity whether or not a nuisance exists or is anticipated to exist, what type it is, and what restrictions are proper pursuant to Civ.R. 65(D)." *Bracket v. Moler Raceway Park, L.L.C.*, 195 Ohio App.3d 372, 2011-Ohio-4469, ¶ 27 (12th Dist.) (*Bracket I*).

{¶ 6} On remand, the trial court issued a decision similar to the 2010 Decision with the exception that the restrictions placed on the Raceway were deleted and the following language was added:

> **THE COURT FINDS** that the operation of the defendants' race track is not a nuisance per se.
>
> **THE COURT FINDS** that acts constituting a nuisance has [sic] not been proven by clear and convincing evidence.
>
> There are no sound or noise standard [sic] in Sterling Township, Brown County, Ohio.
>
> An anticipated nuisance can be enjoyed [sic] by a Court, but only when the factor [sic] show that the anticipated or threatened nuisance will occur by clear and convincing evidence. This was not done in this case.
>
> The plaintiffs have failed their burden of proof. The Plaintiff's

- 3 -

case was not proven by the required standard of proof.

**The Plaintiff's case is hereby dismiss [sic]. Costs to the Plaintiff.**

(Emphasis sic.) (the "2012 Decision"). From the 2012 Decision, the Residents appeal, raising four assignments of error. Moler responds to the Residents' brief with a claim that the first, second, and fourth assignments of error are barred by the law of the case doctrine.

## Law of the Case Doctrine

{¶ 7} Moler contends that the majority of the Residents' claims could, and should, have been raised during the original appeal of the trial court's 2010 Decision. Because the Residents failed to appeal the 2010 Decision, Moler argues that the Residents are now barred, on the basis of the law of the case doctrine, from arguing that the trial court erred in (1) determining the expert testimony was conflicting, (2) concluding that the Residents failed to meet their burden of proof, and (3) conducting independent and outside research.[3]

{¶ 8} The law of the case doctrine provides that the "decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *City of Hubbard ex rel. Creed, Admr. v. Sauline, Mayor, et al.*, 74 Ohio St.3d 402, 404, 1996-Ohio-174; *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). In essence, the doctrine precludes a litigant from attempting to rely on arguments at a retrial which were available to be pursued in a first appeal. *Sauline* at 404. "The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results." *Nolan* at 3. Even so, "the rule is

---

3. In its brief, Moler also asserts that the Residents' claims are barred by the doctrine of res judicata. However, although mentioning res judicata, Moler's argument focuses exclusively on the law of the case doctrine. Therefore, we shall only address that contention. *See* App. R. 12; *Marcus v. Rusk Heating & Cooling, Inc.*, 12th Dist. No. CA2012-03-026, 2013-Ohio-528, ¶ 54 (stating that a general contention in an appellate brief, without argument, does not warrant a review by this court).

necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Id.*

{¶ 9}  In its original 2010 Decision, the trial court determined that the Raceway did not constitute a nuisance, but then placed restrictions upon the Raceway without specifically determining that the Raceway was an anticipatory nuisance.  Nonetheless, the Residents acquired somewhat of a victory through the application of the restrictions and, as such, did not appeal.  Moler, on the other hand, appealed the 2010 Decision and this court, in *Bracket I*, found that the 2010 Decision required clarification.  *Bracket I* did not address a single assignment of error raised by Moler, nor did it address the merits of the case.

{¶ 10} Moler now argues that the *Bracket I* decision found that the Raceway did not constitute a nuisance.  As such, Moler contends that this conclusion was the "law of the case" and cannot now be challenged on appeal.  We find this argument unpersuasive in light of the fact that *Bracket I* made no such finding.  Rather, *Bracket I* clearly states:

> We find that the trial court's decision failed to make a determination as to whether or not proof, to the degree required, established that a nuisance exists or is anticipated to exist.  We therefore reverse the restrictions placed on Moler by the trial court.  On remand, *the trial court is to determine with clarity whether or not a nuisance exists or is anticipated to exist, what type it is, and what restrictions are proper pursuant to Civ.R. 65(D).*

(Emphasis added).  *Bracket I*, 2011-Ohio-4469 at ¶ 27.  In other words, *Bracket I* remanded the case to the trial court for clarification.  *Bracket I* did not hold that the Raceway did not constitute a nuisance.  Consequently, as *Bracket I* made no determination on the nuisance issue, nor addressed any of Moler's assignments of error, the law of the case doctrine does not bar the Residents' assignments of error.  *See, generally, State v. McDermott*, 79 Ohio App.3d 772, 780 (6th Dist.1992). As such, we now turn our attention to the Residents' four

assignments of error.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS APPLICATION OF THE STANDARDS FOR EXPERT OPINION AND ITS CONCLUSION THAT THE TESTIMONY OF "EXPERTS" WAS CONFLICTING.

{¶ 13} In their first assignment of error, the Residents enumerate several arguments regarding the expert witnesses in this case. First, the Residents contend the trial court erred in considering Moler's witness, Rucker, an expert because Rucker had not performed any independent noise testing in the Sterling Township community, had not performed a study or published any articles relating to the impact of noise, and did not state his opinions to any probability or reasonable scientific certainty. Second, the Residents argue the trial court erred in stating that the testimony of Zwerling and Rucker was "conflicting." Finally, the Residents assert the trial court erred in stating that the noise testing by Zwerling was performed on only one day and was, therefore, a "snapshot" test.

### Rucker's Qualification as Expert

{¶ 14} The Residents first claim the trial court erred in considering Rucker's testimony as that of an expert.

{¶ 15} Evid.R. 702 governs the admission of expert testimony. Pursuant to this rule, a witness may testify as an expert if all of the following apply:

> (A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
>
> (B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
>
> (C) The witness' testimony is based on reliable scientific, technical, or other specialized information.

- 6 -

"While this rule permits expert testimony, a threshold determination must first be made under Evid.R. 104(A) concerning the qualification of the witness to testify." *Schneble v. Stark*, 12th Dist. Nos. CA2011-06-063, CA2011-06-064, 2012-Ohio-3130, ¶ 19, quoting *Scott v. Yates*, 71 Ohio St.3d 219, 221 (1994).

{¶ 16} An expert witness is not required to be "the best witness on the subject, but his or her testimony must assist the trier of fact in the search for the truth." *Id.* at ¶ 20, citing *Alexander v. Mt. Carmel Med. Ctr.,* 56 Ohio St.2d 155, 159 (1978). In addition, the expert must demonstrate some knowledge on the particular subject superior to that possessed by an ordinary fact-finder. *Id.*, citing *Yates* at 221. "A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." *Id.* An abuse of discretion occurs when the trial court's judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 17} During trial, Rucker testified that he is an industrial hygienist who runs his own consulting firm measuring occupational and health exposures. He has a bachelor of science in chemistry as well as a master's degree in environmental health. Additionally, Rucker attended two seminars specifically directed towards community noise. Rucker indicated that he has performed at least 50 studies relating to noise and noise measurements and has worked in Brown County, Clermont County, and Hamilton County, Ohio. When hired as a consultant, Rucker testified that he collects "community sound level measurements" in order to establish what the "ambient sound pressure level readings are." However, Rucker admitted that he has never performed any studies or published any articles on the impact of sound on one's ability to sleep or the impact of sound on conversation.

{¶ 18} We find Rucker's credentials were sufficient to qualify him as an expert witness pursuant to Evid.R. 702, as he possessed some superior knowledge not possessed by the

trier of fact, which was acquired through his education and experience in the noise measurement field. Though Rucker admitted that he had not performed a study or published any articles relating to the various impacts of noise, a witness is not required to perform independent tests or experiments in order to qualify as an expert. *See Marcus v. Rusk Heating & Cooling, Inc.*, 2013-Ohio-528 at ¶ 31. As such, the trial court did not err in considering Rucker an expert in the field of noise measurement.

**{¶ 19}** The Residents further assert the trial court erred in relying on Rucker's expert opinion when it was not stated in terms of probability or to a reasonable degree of scientific certainty.

**{¶ 20}** In prior civil cases, this court has found that an expert opinion is admissible only if it is expressed in terms of probability, meaning that the expert must express that there is a greater than 50 percent likelihood that a certain act or failure to act caused a given result. *Schneble v. Stark*, 2012-Ohio-3130 at ¶ 39, citing *Lee v. Barber*, 12th Dist. No. CA2000-02-014, 2001 WL 733449, * 2 (July 2, 2001); *Turner v. Cleveland Clinic Foundation*, 8th Dist. No. 80949, 2002-Ohio-4790, ¶ 44; *Stinson v. England*, 69 Ohio St.3d 451, 455 (1994). We further held that "[e]xpert opinions expressed with a lesser degree of certainty must be excluded as speculative." *Schneble* at ¶ 39.

**{¶ 21}** At the conclusion of Rucker's direct testimony, the following exchange occurred:

> DEFENSE COUNSEL: With all your measurements and your analysis and your data in mind, do you have an opinion of the sound level at the racetrack?
>
> RUCKER: It's clear to me that—that there is ambient noise or sound that reaches the property line. I have an opinion that when one is inside one's home that the noise or sound level is consistent with what's normally found in all the guidelines and references for homes and offices.

Although Rucker does not specifically state that his opinion is based upon probability or a reasonable degree of scientific certainty, the opinion is given with all his measurements, analysis, and data in mind. Additionally, Rucker states that this opinion is "clear" to him. Based upon the definition of "clear" as "free from obscurity or ambiguity; free from doubt; absolute," it is a reasonable conclusion that a "clear" opinion is one expressed with a greater than 50 percent likelihood that a certain act or failure to act caused a given result. Webster's Third New International Dictionary (1993) 419-420.

**{¶ 22}** Moreover, as the trial court was the trier of fact in this case, it was able to assess the credibility of this opinion, along with Rucker's other testimony, and assign the testimony its proper weight. *See Scheble* at ¶ 41 (finding that trial court did not err in giving little weight to testimony of expert whose opinion was stated in terms of speculation only), citing *In re G.K.*, 9th Dist. Nos. 24276, 24278, 2008-Ohio-5442, ¶ 12 (stating that it is the "role of the trier of fact to assess the expert's credibility and to assign weight to the expert's testimony and opinions").

**{¶ 23}** Therefore, based upon our review of the record, we find that the trial court did not err in considering Rucker's opinion even though he did not expressly state his opinion using the keywords "probability" or "reasonable scientific certainty." The trial court was entitled to rely on Rucker's testimony to support its conclusion that the Raceway did not constitute a nuisance.

## Manifest Weight of the Evidence

**{¶ 24}** The Residents additionally argue the trial court erred in finding that Zwerling's sound testing was a "snapshot" test and that the testimony of Zwerling and Rucker was "conflicting." Essentially, the Residents argue that the trial court's conclusions as to the experts in this case were against the manifest weight of the evidence.

**{¶ 25}** The "weight of the evidence concerns 'the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.'" (Emphasis sic.) *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). In a manifest weight analysis, "the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Schneble* at ¶ 67; *Thompkins* at 387. "[E]very reasonable presumption must be made in favor of the judgment and the finding of facts." *Volkman* at ¶ 21. "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment * * *." *Id.*

**{¶ 26}** The Residents called Zwerling as their first witness at trial. Zwerling, a noise expert, is the director of the Rutgers University Noise Technical Assistance Center and president of The Noise Consultancy, LLC.[4] At trial, Zwerling testified generally as to the impact of sound in an individual's daily life. Specifically, Zwerling explained that every 10-decibel increase of sound is considered a "doubling of sound" to the human ear. Zwerling stated that 56 dBA of sound would interfere with two individuals attempting to converse while three meters apart while 60 dBA of sound would interfere with two individuals attempting to converse while two meters apart.

**{¶ 27}** Zwerling then testified that he visited the Sterling Township area on the evening of September 19, 2008, which was a race night at the Raceway. While in Sterling Township, Zwerling performed noise testing "in all compass directions at various distances" from the

---

4. No argument has been raised that Zwerling was not a qualified expert on the impact of noise on conversation and sleep.

Raceway by using sound meters at six of the Residents' homes. Zwerling stated that he used two sound meters in this case; one with a longer run time and one that was set to terminate after 10 minutes. Zwerling set up the longer running sound meter at the home of Residents Dave and Patricia Rumsey and then proceeded to perform shorter tests with the second sound meter at all six locations.

{¶ 28} Prior to the opening of the Raceway, Zwerling testified that the sound level at the Rumsey residence was around 40 dBA. However, the decibel level significantly rose during the racing events. Specifically, Zwerling's report showed as follows:

1) At the Rumsey residence, 1,200 feet from the center of the track, average active racing readings were 75.5 dBA, peaking at 92.2 dBA.

2) At the Waugh residence, 1,440 feet from the center of the track, average active racing readings were 78.1 dBA, peaking at 87.8 dBA.

3) At the Deaton residence, 1,890 feet from the center of the track, average active racing readings were 70.1 dBA, peaking at 85.1 dBA.

4) At the McChesney residence, 3,360 feet from the center of the track, average active racing readings were 61.7 dBA, peaking at 77.3 dBA.

5) At the Brewer residence, 5,825 feet from the center of the track, average active racing readings were 57.5 dBA, peaking at 66.2 dBA.

6) At the Thomas residence, 8,070 feet from the center of the track, average active racing readings were 51.2 dBA, peaking at 59.8 dBA.

{¶ 29} Both the Residents and Moler then proceeded to call a total of 40 lay witnesses who live in proximity of the Raceway. Each witness voiced their opinion as to the noise emitted by the Raceway. The Residents' witnesses considered the sound from the Raceway to be similar to "a herd of buffalo," "a tornado," "a loud roar," a "buzzing like a nest of

hornets," and "a little less than two F-14s taking off." Moler's witnesses, on the other hand, did not take issue with the noise produced by the Raceway. Several of Moler's witnesses participated in some capacity at the Raceway and stated that they could have normal conversation at the Raceway without interference from the races. One witness testified that his two-year-old daughter sleeps at the Raceway during races and that he does not hear sounds coming from the Raceway while in his home, which is in close proximity to the track.

{¶ 30} Finally, Moler called Rucker to testify regarding his opinion on noise emission from the Raceway. Rucker testified that he took sound measurements on October 2, 2009 at (1) the intersection of State Route 32 and State Route 68, (2) the Western Brown High School football game, and (3) the Brown County Fair in order to offer a "comparison of a community nighttime activity or noises generated." Specifically, Rucker measured the sound emitted by different events at the Fair including the playing of "The Star Spangled Banner," a tractor pull, and the Ferris Wheel while it was in use as well as sound emitted by vehicles on the highway and the sounds of the football game. He explained that these sound measurements would assist in determining the "nighttime entertainment activities" that occur in the Sterling Township community in order to form a basis as to what would constitute a nuisance in the community.

{¶ 31} Rucker further testified that he did not take noise measurements at the Residents' homes because those measurements had already been taken by Zwerling and, therefore, did not need to be reproduced. Rucker ultimately opined that "when one is inside one's home that the noise or sound level is consistent with what's normally found in the guidelines and references for homes and offices." Essentially, Rucker testified that the noise levels associated with the Raceway are similar to other activities occurring in the surrounding area.

{¶ 32} Rucker acknowledged, however, that there was no noise guideline in place for

Sterling Township and that he had never visited the homes of any of the Residents, including during a race at the Raceway. Rucker further acknowledged that while an individual voluntarily attends a football game or fair, there is no evidence that the Residents voluntarily attend events at the Raceway.

{¶ 33} While we do not deny that the parties presented convergent views of the noise level coming from the Raceway and its impact on the surrounding Sterling Township community, it is apparent that the trial court found Moler's evidence, including the testimony of Rucker, to be more credible. After a careful review of the record, we are not persuaded by the Residents' contention that the trial court's judgment that the testimony of Zwerling and Rucker is conflicting is against the manifest weight of the evidence. Although the Residents clearly find their expert to be more qualified in the field of noise testing, the trial court was in the best position to observe the witnesses and ultimately make credibility determinations. *See Schneble*, 2012-Ohio-3031 at ¶ 69. Accordingly, the trial court did not clearly lose its way and create a manifest miscarriage of justice in making such credibility determinations.

{¶ 34} Furthermore, we find that the trial court did not err in classifying Zwerling's noise testing as a "snapshot at the particular time of testing." Zwerling, himself, referred to his one-day testing as a "valid *snapshot* of operations on that date * * * and the measured levels are completely an accurate representation of the sound emissions on that specific date." (Emphasis added.) The trial court did not err in characterizing Zwerling's testing in the same manner that Zwerling used.

{¶ 35} Therefore, based upon the foregoing, we find that the trial court's decision is supported by competent, credible evidence and is not against the manifest weight of the evidence. Accordingly, the Residents' first assignment of error is overruled.

{¶ 36} Assignment of Error No. 2:

{¶ 37} THE TRIAL COURT ERRED IN APPLYING THE WRONG LEGAL STANDARD

FOR CONSIDERATION FOR A NUISANCE CLAIM.

{¶ 38} In their second assignment of error, the Residents contend the trial court erred in stating that the Residents had the burden of proving their case by clear and convincing evidence when the proper standard in a nuisance case is proof by a preponderance of the evidence.[5]

{¶ 39} The Residents are correct in their contention that, in establishing the existence of a nuisance, the burden of proof required is that of a preponderance of the evidence. *Zangrondo v. Kuder*, 9th Dist. No. 22448, 2006-Ohio-1549, ¶ 10; *Kremer v. City of Uhrichsville*, 67 Ohio App. 61, 63-64 (5th Dist.1940); *Steele v. Rail & River Coal Co.*, 42 Ohio App. 228, 237 (7th Dist.1927).

{¶ 40} However, the Residents sought a permanent injunction against Moler to completely shut down all commercial activity at the Raceway. In order to obtain injunctive relief, the Residents had the burden to prove their allegations by clear and convincing evidence. *Bracket I* at ¶ 16; *City of Youngstown v. McDonough*, 7th Dist. No. 00 C.A. 19, 2000 WL 1847662, *2 (Dec. 12, 2000). Thus, even though the Residents were only required to prove the existence of a nuisance by a preponderance of the evidence, they were further required to establish the need for injunctive relief by clear and convincing evidence.

{¶ 41} In addition, the Residents initially sought monetary damages for the loss of use and enjoyment of their property and diminution of their property values. A nuisance claim seeking monetary damages must be proven by a preponderance of the evidence. *Banford v. Aldrich Chem. Co., Inc.*, 126 Ohio St.3d 210, 2010-Ohio-2470, ¶ 19; *Steele* at 237.

{¶ 42} However, in their Proposed Findings of Fact and Conclusions of Law, the

---

5. The Residents also argue that the trial court erred by not relying on case law cited by the Residents and this court in *Bracket I*. However, the Residents provide no authority for the contention that a trial court must rely on case law provided by the parties or by the court of appeals without specific instruction to do so. Therefore, we find the Residents' argument meritless without further discussion.

Residents focused exclusively on their request for permanent injunction and made no mention of any damages sought, thus abandoning their claim for monetary damages. *See E. Liverpool v. Buckeye Water Dist.*, 7th Dist. No. 08 CO 19, 2010-Ohio-3170, ¶ 3 and ¶ 52 (noting that a party may "abandon" a prior argument in their proposed findings of fact and conclusions of law).

{¶ 43} Based upon the foregoing, we find that the trial court erred in finding that the Residents had the burden of proving their nuisance claim by clear and convincing evidence, as a complainant need only establish the existence of a nuisance by a preponderance of the evidence. However, we find this error harmless, as the Residents were required to prove their prayer for injunctive relief by clear and convincing evidence and had abandoned their prayer for monetary damages. Accordingly, the Residents' second assignment of error is overruled.

{¶ 44} Assignment of Error No. 3:

{¶ 45} THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT FOLLOWING THE DIRECTIVE OF THIS COURT UPON REMAND TO PROVIDE MORE ANALYSIS.

{¶ 46} In their third assignment of error, the Residents argue that, rather than following the directive of this court in *Bracket I* to provide further analysis of its decision, the trial court simply deleted the restrictions it had initially placed on the Raceway. In doing so, the Residents contend the trial court "completely and totally" failed to follow this court's order and, consequently, the trial court's 2012 Decision was made in error.

{¶ 47} "When a case is remanded to a trial court from an appellate court, the mandate of that appellate court must be followed." *Kaechele v. Kaechele*, 61 Ohio App.3d 159, 162 (10th Dist.1989). "Absent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan v. Nolan*, 11 Ohio St.3d 1 (1984), syllabus.

"Moreover, the trial court is without authority to extend or vary the mandate given." *Id.* at 4, citing *Briggs v. Pennsylvania RR. Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039 (1948).

{¶ 48} The Residents maintain that the trial court did not conform itself to this court's mandate. Based upon the record before us, however, we disagree.

{¶ 49} In *Bracket I*, this court found that the trial court's 2010 Decision made "several inconsistent findings and offer[ed] little analysis regarding those findings." As a result, we remanded the case in order for the trial court "to determine with clarity whether or not a nuisance exists or is anticipated to exist, what type it is, and what restrictions are proper pursuant to Civ.R. 65(D)." Although *Bracket I* states that the trial court's 2010 Decision lacked analysis, we did not remand the case for the trial court to simply provide more analysis. Rather, the remand was ordered for the trial court to clarify its determinations as to the existence of a nuisance.

{¶ 50} On remand, the trial court determined that the Raceway "is not a nuisance per se," that the Residents failed to establish the existence of an anticipated or threatened nuisance, and that the Residents' case "was not proven by the required standard of review." With this determination, the trial court dismissed the Residents' case.

{¶ 51} Based upon our review of *Bracket I*, as well as the trial court's 2010 and 2012 Decisions, we find that the trial court did not err as a matter of law by not following this court's directive. The trial court did as it was instructed on remand. As such, the Residents' third assignment of error is overruled.

{¶ 52} Assignment of Error No. 4:

{¶ 53} THE TRIAL COURT ERRED IN CONSIDERING MATTERS OUTSIDE THE RECORD IN REACHING ITS DECISION.

{¶ 54} In their final assignment of error, the Residents argue the trial court erred in conducting independent research prior to ruling on the case.

- 16 -

{¶ 55} In its 2012 Decision, the trial court discussed former Governor Rhodes' desire to complete State Route 32 and findings that, in 2008, "the Franklin County metropolitan area suddenly had more residents residing outside of its outerbelt than within the belt way." According to the Residents, these "general ramblings" indicate the trial court performed outside research not presented at trial which prejudiced the Residents. The Residents also take issue with the trial court's determination that there are no standard procedures for conducting noise level testing and that there were no noise standards in Ohio, Brown County, or Sterling Township.

{¶ 56} Evid.R. 201 provides that a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." In other words, courts may take judicial notice of "whatever is generally known or ought to be generally known within the limits of their jurisdiction, for the court is presumed to know what is of common knowledge." 15 Ohio Jurisprudence 2d 474, Criminal Law, Section 299; *State v. Scott,* 3 Ohio App.2d 239, 242 (7th Dist.1965). "Courts may take judicial notice of geographical facts which are matters of common knowledge, particularly those existing within the jurisdiction of the court." *Id.*, citing 21 Ohio Jurisprudence 2d 58, Evidence, Section 43.

{¶ 57} In this case, the trial court took judicial notice of facts regarding State Route 32 and the Franklin County metropolitan area. The statements do not indicate that the trial court relied on outside research in forming its opinion. Rather, the trial court's statements regarding State Route 32 and Franklin County are introductory material regarding the geographical areas in and around Sterling Township.

{¶ 58} Furthermore, Evid.R. 201(E) provides that a "party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor

of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." In this case, the Residents failed to request an opportunity to be heard on the propriety of taking judicial notice in this case. Consequently, the Residents "waived or forfeited any challenge to the judicially-noticed facts." *State v. Howard*, 12th Dist. No. CA2009-11-144, 2010-Ohio-2303, ¶ 23.

{¶ 59} In addition, if any of these statements were made in error, the error would be harmless, as the statements made by the trial court are not relevant to the trial court's findings and, as analyzed above, sufficient, competent, credible evidence exists on the record from which the court could conclude that the Raceway did not constitute a nuisance. *Schneble v. Stark*, 2012-Ohio-3130 at ¶ 16.

{¶ 60} The Residents additionally argue that the trial court erred in stating that there were no standard procedures for conducting noise level testing and that there were no noise standards in Ohio, Brown County, or Sterling Township. However, in reviewing the record in this case, the Residents' expert, Zwerling, actually testified that "there is no per se standardized operating procedure" for noise testing. In addition, Zwerling and Rucker testified that there is no noise ordinance in Sterling Township or Brown County which would apply in this case. Thus, the trial court did not err in basing its findings directly from the testimony presented at trial. Accordingly, appellant's fourth and final assignment of error is overruled.

{¶ 61} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.